(Decided 5th December, 1884.)

GEORGE PETER *vs.* ELIJAH B. PRETTYMAN, Clerk of the Circuit Court for Montgomery County, and THE COUNTY COMMISSIONERS OF MONTGOMERY COUNTY.

*Rights of tax payers—Injunction—County Commissioners— Clerks of the Circuit Courts—General Index of deeds—Alphabeting fees—Construction of section 13, of Article 29, of the Code, as amended by the Act of 1866, ch. 26, and of section 10, of Article 4, of the Constitution.*

A tax payer, who presents a case of clear violation of the law and of his and other tax payers' rights, should a claim which he objects to be allowed and paid by the county commissioners, has a right to have such payment restrained by injunction.

The county commissioners are a body politic, a corporation charged with the administration of the county affairs, and can only do what their charter, by express language or necessary implication, permits.

The clerk of the Circuit Court for M. County neglected to make a general alphabetical index of the deeds and other instruments left with him to be recorded in the land records of said county. An order was passed by the Circuit Court for said county, requiring him to make such index, and in doing so "to use record books

known as 'Campbell's Index.'" The order further provided, that when said work " shall have been completed and approved by this Court, the clerk shall be paid therefor by said county, such compensation as this Court may deem reasonable." The Court approved the work done under this order, and recommended the payment of the charge made therefor. On a bill filed by a tax payer of said county, for an injunction to restrain the county commissioners from paying said charge, it was HELD:

1st. That if there be any law requiring the clerk to do the work for which his claim was made, either expressly or impliedly, at the public expense, it would be the duty of the commissioners to provide for its payment; but if the duty was upon the clerk to make the general index, and the intention of the law was, that he should be paid his compensation in another way, then the claim was improperly preferred.

2nd. That if by any provision of the Constitution or laws of the State, the Court was clothed with power to require this duty of the clerk at the public expense, then by necessary implication the county commissioners were bound to pay for it; but not otherwise; notwithstanding the Court had directed the work to be done, and the commissioners to pay for it.

3rd. That the clear intention of the law was, that the parties having papers recorded, should pay all the charges incidental to their record and regular entry in the indexes of the office.

4th. That a uniform practice in the State, as far as the Court could learn, included alphabeting fees in the charges for recording deeds or other instruments brought to the clerk for record.

5th. That it was the duty of the clerk to do the work, and the law provided him with abundant protection for collecting the fees which he was entitled to charge for it, and if he did not collect them, the county ought not to be charged with the result of his negligence.

6th. That so much of the order of the Circuit Court as directed the clerk to do said work, was unwarranted by section 13, of Article 29, as amended by the Act of 1866, ch. 26, inasmuch as it did not direct an index already made and dilapidated to be copied, but directed the clerk to bring up his work by making a general index covering his incumbency, and which he had neglected to make before.

7th. That the power to pass such order was not conferred upon the Court by section 10, of Article 4, of the Constitution.

8th. That the obligation of the clerk to make the general index under the Code, and to look for his payment to the persons offering papers for record, was unaffected by said order.

9th. That the method of doing the work was within the power of the judges to direct. And if that method subjected the clerk to unusual trouble and expense, and greater than the statute contemplated, his only remedy was legislative intervention in his behalf.

10th. That the complainant was entitled to the injunction asked for.

APPEAL from the Circuit Court for Montgomery County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, IRVING, and BRYAN, J.

*Edward C. Peter,* and *Francis Miller,* for the appellant.

*Charles W. Prettyman,* and *Thomas Anderson,* for the appellees.

IRVING J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court for Montgomery County dismissing the appellant's bill which prayed an injunction against the appellees. The case was submitted upon bill, the answer of the county commissioners of Montgomery County, and the plea of the appellee Prettyman with his exhibits; and the only questions for us are questions of law. The bill alleges, that complainant is a tax payer in, and a citizen of, Montgomery County; and that he files his bill on his own behalf, and the behalf of all others similarly interested. It alleges, that the appellee Prettyman is the clerk of the Circuit Court for Montgomery County, and has been continuously

such clerk since the month of November, 1863; and that among other duties appertaining to his office he was required by law to record all mortgages, deeds, bills of sale, &c., and to make an alphabetical index thereof in each liber of the records, and also to make a general alphabetical index of all these records in a separate volume, for which work he was entitled to charge and receive such fees as the law prescribed, from the individuals having the instruments recorded; and that he has just completed a general index of such records from the time of his becoming such clerk, which is the only general index he has ever made for his office; and notwithstanding the provisions of law regulating the charges for such service, he has presented a bill for six hundred dollars against the commissioners of the county for making such general index. This bill the complainant charges the county commissioners are not warranted by law in paying, and that they should not be allowed to pay. Alleging that they are about to pay it the bill prays for an injunction.

The clerk pleads, that the general index mentioned in the bill of complaint "was undertaken and made in obedience to the order of the Circuit Court for Montgomery County, passed on the fourth day of June, eighteen hundred and seventy-seven," which order is in the following words, viz., "Upon the inspection of the records and papers of the office of the clerk of this Court, relating to lands, tenements, and other real estate, and examining the condition thereof, it appears to the Court that the general index of the land records of said county have become so dilapidated and worn as to require them to be transcribed: It is thereupon, this fourth day of June, 1877; ordered by this Court that the clerk of this Court transcribe the said general index in a full, bold hand into new record books; and also transcribe in like manner, and bring up to the present date, the indexes of all deeds required by law to be recorded, into the general index of the land records of

said county.   And it is also ordered, that said clerk use record books known as 'Campbell's Index.'   It is also ordered, that said transcription shall be proceeded in to completion without delay, and when the same shall have been completed, and approved by this Court, the clerk shall be paid therefor by said county such compensation as this Court may deem reasonable."   This order was signed by two of the Judges of the Court.   The plea further set out that the bill for such service would be paid by the county commissioners in pursuance of, and in obedience, to two other orders of the Court approving the work and recommending the payment of the charge made, viz., the $600. He further pleads that the complainant has full and complete remedy at law.   The county commissioners answered the bill, and without admitting or denying the other allegations of the bill, admitted the presentation of the bill by the defendant Prettyman for making the general index mentioned in the bill, and that the same would be paid unless the order of Court respecting the same should be rescinded.

After hearing, the Circuit Court dismissed the bill; and from this decree refusing an injunction and dismissing the bill, this appeal was taken.

The plea to the jurisdiction of the Court can not be maintained.   It is no longer an open question in this State whether a tax payer, having no other or special interest different from that of the public, may crave the interference of the Court of equity to prevent illegal taxation. The power and right of the Court of equity to interfere by injunction in such case is unequivocally asserted in *Mayor and City Council of Baltimore vs. Gill*, 31 *Md.*, 393, and in no case since has that principle been questioned. The case of *Kelly, Piet & Co. vs. Mayor and City Council*, &c., 53 *Md.*, 134, relied on by appellees, recognizes the authority and propriety of *Gill's Case* in 31 *Md.*, but rests upon an exception from the rule which the facts of that case

Peter *vs.* Prettyman, *et al.*

presented. In that case the complainants suffered especial damage other and different from the tax payers generally. In this case the complainant occupies no such position, and if he has presented a case of clear violation of the law, and his and other tax payers' rights, should the claim of the defendant clerk be allowed and paid by the county commissioners, the injunction ought to have been granted.

The county commissioners are a body politic; a corporation charged with the administration of the county affairs, and can only do what their charter powers, by express language or necessary implication, permit. The fifth section of Article 28 of the Code of Public General Laws giving them their authority, directs that "they shall levy all needful taxes on the assessable property within the county liable to taxation, and provide for collecting the same, and they may make such levy in whole or in part by estimate; they shall provide for the support of the Courts, compensate jurors and county or State witnesses, levy for out-pensions allowed by themselves or the trustees of the poor, and such sums as may be necessary to pay accounts allowed by them for the funeral expenses of paupers, and pay and discharge all claims on or against the county which have been expressly or impliedly authorized by law."

If there be any law requiring the clerk to do this work for which his claim is made, either expressly or impliedly, at public expense, it would be the duty of the commissioners to provide for its payment; but if the duty was upon the clerk to make this general index, and the intention of the law was that he should be paid his compensation in another way, then the claim is improperly preferred. If by any provision of the Constitution or laws of the State the Court was clothed with power to require this duty of the clerk at public expense, then by necessary implication the county commissioners were bound to pay for it; but not otherwise; notwithstanding the Court may have directed the work to be done, and the commissioners to pay for it.

By the 51st, 52nd and 53rd sections of Article 18 of the Code of Public General Laws it is made the duty of the clerk to make not only an alphabetical index for each record book, but also a *general* alphabetical index of all the deeds and instruments required to be recorded ; and by the tenth section of Article 38 of the Code of Public General Laws, the fee for doing this work is fixed at one and one-quarter cents for every ten words, or twelve and one-half cents for every hundred words. It was admitted in argument that the alphabeting in the several libers was chargeable against and collected from the parties having instruments recorded ; but it was contended that this general index was more especially for public benefit and was properly chargeable against the public. We can not see why a general index, which informs a party of the liber and page where his deed is recorded, is not to be regarded as made for his benefit. Such index would seem to be of more service than the liber index. The requiring of such index was, of course, to facilitate the search of the records by everybody ; but the clear intention of the law was that the parties having papers recorded should pay all the charges incidental to their record and regular entry in the indexes of the office.

· The Constitution of the State makes a clerk's compensation to arise from the *fees* of his office. The first section of Article 38 of the Code of Public General Laws requires that *all fees* for services as an officer shall be made out against the *person* to whom they are to be charged in words at length ; thus, if not expressly requiring, by necessary implication indicating that the parties requiring the services were to pay the fees. A uniform practice in the State, as far as we can learn, has included the alphabeting fees in the charges for recording deeds or other instruments brought to the clerk for record. The eighth section of that Article provides, that in the event of an outgoing clerk not having discharged his duty in respect

to the records, within the six months after the expiration of his term allowed for his finishing his work, the new clerk shall be allowed the usual fees for doing the work, to be paid by his *predecessor* or his representatives; "and in cases where the fees *have not been received* by his predecessor, such clerk or register shall collect the same from the *parties* in the same manner that he collects other fees for similar services." Thus it appears that the parties for whom, and for whose protection as to title, the work is done, are designed to pay for the same; and by the sixth section of the same article the officer is permitted to demand his fees in advance in certain cases. If therefore the clerk, being bound for the discharge of the duty, and having abundant protection for the collection of all his fees, did not collect them, it is no fault of the county, and it ought not to be charged with the results of his negligence. It was his duty to do the work, and the natural presumption is that the clerk charged and received the compensation which the law allowed, from the parties recording the instruments according to the general practice. But it is contended that under the 13th section of Article 29 of the Code of Public General Laws regulating the Courts visitorial power, as amended by chapter 26 of the Acts of 1866, the Court had the power to direct this work to be done, and it having done so, and the work being done, the commissioners are bound to pay for it. After making it the duty of the Judges at every term of their Court to inspect the papers of the offices attached to their respective Courts, relating to lands and tenements, and examine into their condition, and see whether the clerk had done his duty as required by law, the section referred to, proceeds as follows: "And if it should appear on such examination, that any of the records have become so dilapidated, and worn as to require them to be transcribed, he shall order and direct the clerk to transcribe the same into new record books, which the clerk shall procure for that pur-

pose; and such new records when so transcribed, shall be carefully examined and certified by said clerk, and when so examined and certified, shall be substituted for, and become the records of said Court in lieu of the worn-out records; and the Mayor and City Council of Baltimore, and the county commissioners of the several counties respectively, shall levy such sum of money as they shall deem a fair compensation for the labor of the clerk in making such new records."

Now, it is clear from the language of this section it was only worn-out records, that the Legislature were providing to have preserved for the public good. They were to be examined and certified as correctly copied, and without such certificate, they could not take the place of the old. When that was done the county commissioners were expressly directed, by the law, to pay for the work what *they* thought reasonable compensation for the work, and not what the Court should think was reasonable. So far as the work done under this order was within the provisions of this statute, the county commissioners were bound to pay what they thought right; and they have paid it we are told without objection made. If the Legislature had ordered the work *now* in contention to be done, under the frequent decisions of this Court the county would have been bound to pay for it. *State vs. Dunnington, et al.,* 12 *Md.,* 341; *Comm'rs of Public Schools vs. County Comm'rs of Allegany Co.,* 20 *Md.,* 449. But this part of the order was not warranted by the power given in the law referred to. It does not direct an index already made by the clerk and dilapidated to be copied, but directs him to bring up his index in accordance with the same system, the "Campbell system." Confessedly Mr. Prettyman had made no general index during his incumbency; so there was none to be worn out and to be transcribed under the law. His duty in that respect had been neglected until after the Court's order was passed. It is contended, however, that

the order directed him to do the work in a particular
way, different from that which obtained when he was
elected and took charge of the office, and until the date
of that order when the system was adopted; and that
therefore he is entitled to be paid for it, because that much
of the order as referred to his index was warranted by the
constitutional power conferred upon the Court by section
10 of Article 4 of the Constitution. That section is as fol-
lows: "The clerks of the several Courts created or con-
tinued by this Constitution, shall have charge and custody
of the records and other papers, shall perform all the
duties, and be allowed the fees which appertain to their
several offices, as the same now are, or may hereafter be
regulated by law. And the office and business of said
clerks, in all their departments, shall be subject to the visi-
torial power of the Judges of their respective Courts, who
shall exercise the same from time to time, so as to insure
the faithful performance of the duties of said offices; and
it shall be the duty of the Judges of said Courts re-
spectively, to make, from time, to time such rules and
regulations as may be necessary and proper for the govern-
ment of said clerks, and for the performance of the duties
of their offices, which shall have the force of law until re-
pealed, or modified by the General Assembly." Now, the
only ground, upon which it can be supposed that this pro-
vision of the Constitution creates the obligation on the
county to pay for it, is, that the power to make regula-
tions governing the clerk which should have the force of
law, gave the Court power to pass the order and *create*
the obligation on the part of the county. This seems to
have been the view of the present Court, from which the
appeal is taken, of the effect of the order of their prede-
cessors, but we cannot agree with them.

It is expressly stated that this visitorial power is given
for the purpose of securing the faithful performance of
duty. The law imposes certain duties on the clerks and

requires a bond from them for their faithful performance. To more certainly insure the proper discharge of their duties thus required of them by the law, the Judges are, by the Constitution, given power not only to supervise them, but to prescribe regulations and rules necessary to secure the prompt and efficient discharge of their duties. Clearly this was the meaning and object of the makers of the Constitution. It certainly did not design to relieve the clerks from the obligation to do what the law already required of them, but was intended to enforce strict compliance with those requirements. *How* the clerks were to perform their duties was committed to the Judges to determine; and when such method was prescribed, it was to have the force of law. Legislative power was not intended to be given the Judges in the sense of power to repeal existing statutes; and of *taxing the public* with the payment for services which were by the existing law required to be paid for by the individuals for whom, and at whose instance, the service was rendered. A fair construction of this clause of the Constitution will allow the Judges no other or greater power than of supervisal, regulation and direction, through rules intended to ensure the orderly, prompt, and efficient discharge of duty. Greater power cannot be given the Judges under this section of the Constitution, without stretching its language so as to make the Judges superior to the Legislature. The object of the provision was clearly to coerce full compliance with all laws imposing duties upon the clerks.

If this be the true view of the intent, scope and operation of this section of the Constitution, then the obligation of the clerk, to make the general index under the Code, and to look for his payment to the persons offering papers for record, was unaffected by the order of the Court, which is invoked. The *method* of doing the work was within the power of the Judges to direct. That was prescribed. If that method subjected the clerk to unusual trouble and

expense, and greater than the statute contemplated, then his only remedy was legislative intervention in his behalf. He should have sought it from the Legislature, instead of an order from the Court. For the reasons we have assigned we are all clearly of opinion that the injunction asked for ought to have been granted, and that there was error in refusing that relief and dismissing the bill.

*Decree reversed, and*
*cause remanded.*

(Decided 5th December, 1884.]