GROSMAN *v.* REAL ESTATE COMMISSION

[No. 91, September Term, 1972.]

*Decided December 6, 1972.*

The cause was argued before BARNES, SINGLEY, SMITH and DIGGES, JJ., and WILLIAM J. O'DONNELL, Associate Judge of the Supreme Bench of Baltimore City, specially assigned.

*Arnold Fleischmann* for appellant.

*Thomas G. Young, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

This case apparently arose out of the mailing of about 130,000 postal cards in Baltimore City soliciting the purchase of homes. The Real Estate Commission (the Commission) directed appellant, Ralph Grosman (Grosman), to appear before it "to testify in the complaint of the Real Estate Commission of Maryland against Mr. Ralph Grosman. . . ." The case can be best understood if we set forth the findings of fact and conclusions of law of the Commission. They are:

### "FINDINGS OF FACT

"1. The Board finds from the testimony of Mrs. Tommy Nachman . . . that she received a card from the Apollo Estates Corporation (hereinafter AEC) stating in part 'Houses Wanted'; and further that said card was received on August 5, 1971. (Commission Exhibit 2)

"2. The Board further finds from the testi-

mony of Mrs. Nachman that on the day she received said card she called the Real Estate Commission, and that on the following day she wrote a letter to the Commission concerning said card. (Commission Exhibit 2A)

"3. The Board finds from the testimony of Arthur W. Lockner, Jr., . . . that he received a card at his home on August 10 or 11, 1971, from AEC stating in part 'Houses Wanted', (Commission Exhibit 3) ; and that pursuant to receiving said card, Mr. Lockner wrote a letter to the Real Estate Commission concerning said card (Commission Exhibit 3A).

"4. The Board further finds from Mr. Lockner's testimony that he personally canvassed other residents of the immediate area where his home is located, and found that they had received the same card from AEC. (Commission Exhibit 3)

"5. The Board finds from the testimony of G. Neilson Sigler . . . that he received a similar card from AEC on July 30, 1971. (Commission Exhibit 4)

"6. The Board finds from the testimony of Rudolph I. Glessner . . . that on August 5, 1971, he received a card from AEC Enterprises stating in part 'Houses Wanted' (Commission Exhibit 5) ; and that he notified the Real Estate Commission by letter enclosing said card. (Commission Exhibit 5A)

"7. The Board finds from the testimony of Gerald F. Cotter . . . that he was an officer of AEC prior to and during the period July 26 through August 9, 1971. The Board further finds from Mr. Cotter's testimony that he both bought and sold real estate for a period of approximately three weeks prior to July 26, 1971.

"8. The Board further finds from Mr. Cotter's testimony that he hired one Ralph Grosman on

July 26, 1971 as the licensed broker for AEC, and that he discussed with Mr. Grosman during the period July 19, through July 26, 1971, the publicity which the activities of AEC had generated.

"9. The Board finds from Mr. Cotter's testimony that AEC mailed approximately 130,-000 cards to various areas of Baltimore City up to August 8, 1971, and that both prior to the time of his hiring of Ralph Grosman and during the period that Mr. Grosman was employed by AEC, a great amount of publicity was generated by the activities of AEC.

"10. The Board finds from the testimony of Ralph Grosman that he was employed by AEC during the period July 26, 1971 to August 9, 1971, and that he was the broker of record for AEC during this period of time.

"11. The Board further finds from the testimony of Mr. Grosman that he discussed the publicity and newspaper articles concerning AEC's activities during the week preceding July 26, 1971.

"12. The Board finds from Mr. Grosman's testimony that he was aware that mass solicitation was illegal in Baltimore City at the time of his employment by AEC.

"13. The Board further finds from the testimony of Mrs. Nachman, Mr. Lockner, Mr. Sigler, Mr. Glessner and Mr. Cotter that a large quantity of said cards were mailed by AEC during the period of time that Mr. Grosman was the licensed broker for said AEC, and further finds from Comm. Exhibits 2, 3, 4 and 5 that said cards did not contain the name of Mr. Grosman.

## "CONCLUSIONS OF LAW

"1. The Board finds that the Respondent, Ralph Grosman, is guilty of violating Article

56, Section 224 (j) of the Annotated Code of Maryland.

"2. The Board finds that the Respondent, Ralph Grosman, is not guilty of violating Article 56, Section 230B (a) of the Annotated Code of Maryland.

"3. The Board finds that the Respondent, Ralph Grosman, is guilty of violating Article 56, Section 224 (u) and Articles 3, 7 and 10 of the Code of Ethics of the Real Estate Commission."

Grosman's license was suspended for a period of 90 days for each of the violations found, the suspensions to run concurrently. This action has been stayed by the filing of a bond pursuant to Code (1957, 1972 Repl. Vol.) Art. 56, § 225 (c).

Section 224 of Art. 56 sets forth a number of reasons for suspension or revocation of the license of a real estate broker or salesman. Subsection (j), which Grosman was found guilty of violating, provides:

"(j) Any misleading or untruthful advertising, including advertising property for sale or for rent as an agent or broker without disclosing in such advertising the name of the advertiser or the fact that he is an agent or broker, or where any such advertising is published over the name of a licensed real estate salesman, failure to disclose in such advertisement the name of the broker whom such salesman is licensed to represent. . . ."

The second statutory violation found by the Commission was relative to § 224 (u) which simply prohibits violation of any provision of the code of ethics adopted by the Commission. It will be noted that the Commission found Grosman guilty of violation of articles 3, 7, and 10 of the Commission's code of ethics. They are:

"ARTICLE 3.

It is the duty of the licensee to protect the pub-

lic against fraud, misrepresentation or unethical practices in the real estate field. He should endeavor to eliminate in his community any practices which could be damaging to the public or to the dignity and integrity of the real estate profession. The licensee should assist the commission charged with regulating the practices of brokers and salesmen in this State."

"ARTICLE 7.

The licensee in his advertising should be especially careful to present a true picture and should neither advertise without disclosing his name, nor permit his salesmen to use individual names or telephone numbers, unless the salesman's connection with the license is obvious in the advertisement."

"ARTICLE 10.

In justice to those who place their interests in his care, the licensee should endeavor always to be informed regarding laws, proposed legislation, governmental orders, and other essential information and public policies which affect those interests."

The story here began when Apollo Estates Corporation, a Delaware corporation trading in Maryland as A.E.C. Enterprises (A.E.C.), mailed a number of postal cards in Baltimore which said:

"H O U S E S   W A N T E D

Fast Action — No Commission

A L L   C A S H   P A I D

Call Now

A. E. C.   Enterprises

SOLICITATION   THIS IS NOT A

1124 North Charles St.     Baltimore, Md. 21201

385 - 1600"

These are the cards to which reference is made in the Commission's findings of fact. An individual who had listed his property with Grosman, a real estate broker, received such a card and asked Grosman to approach A.E.C., which he did. About that time A.E.C. had been informed by the Commission that if it proposed operating in Maryland it would be obliged to have a licensed Maryland broker. Grosman was employed by A.E.C. as its broker of record from July 26, 1971, to August 9, 1971.

The bases for review in a proceeding of this kind are set forth in Code (1957, 1971 Repl. Vol.) Art. 41, § 255 (g) and were discussed for the Court by Judge Horney in *Bernstein v. Real Estate Comm.*, 221 Md. 221, 230-31, 156 A. 2d 657 (1959), *appeal dismissed*, 363 U. S. 419 (1960). As was pointed out in that case, courts are not permitted to substitute their judgment for the expertise of those persons who constitute the administrative agency from which the appeal is taken.

It is obvious that if the finding of the Commission is to stand, the evidence must show that Grosman violated § 224 (j) or one of the articles of the code of ethics previously mentioned. The finding that "he was aware that mass solicitation was illegal in Baltimore City at the time of his employment by AEC." is without relevance. First of all, the Commission found him not guilty of violation of Code (1972 Repl. Vol. as enacted by Chapter 476 of the Acts of 1970) Art. 56, § 230B (a) which makes it "unlawful, in transactions involving residential real estate, for real estate brokers, salesmen, dealers, or their agents to solicit or attempt to solicit the listing of residential properties for sale . . . in person, or by telephone, or by mass distribution of circulars, if one of the purposes of this solicitation or attempted solicitation is to change the racial composition of the neighborhood." But secondly, so far as anything brought to our attention discloses, it is not "mass solicitation" which is illegal, but mass solicitation where "one of the purposes . . . is to change the racial composition of the neighborhood," which the Commission specifically found Grosman not guilty of doing.

It is apparent that the Commission and the Superior Court of Baltimore City attempted to hang their hats on § 224 (j) and the fact that Grosman's name did not appear on all of the cards that were mailed out. Parenthetically it might be said that Grosman testified that from the time he became employed by A.E.C. he insisted that his name be on all cards, that in fact there is in the record a card with his name on it, and that in his appeal to us he contests the assumption that cards without a date on the postmark because they were a bulk mailing were in fact mailed during his short tenure, a point we find it unnecessary to consider.

The term "advertising" is defined in *Webster's New International Dictionary of the English Language* (2nd ed. unabridged 1959) as:

> "**a** Any form of public announcement intended to aid directly or indirectly in the sale of a commodity, etc., in the promulgation of a doctrine or idea, in securing attendance, as at a meeting, or the like. **b** Advertisements collectively. **c** The act or business of preparing and circulating advertisements."

In *The Random House Dictionary of the English Language* (unabridged ed. 1967) the term is defined as:

> "**1.** the act or practice of calling public attention to one's product, service, need, etc., esp. by paid announcements in newspapers and magazines, over radio or television, on billboards, etc.; *to get more customers by advertising.* **2.** paid announcements; advertisements. **3.** the profession of planning, designing, and writing advertisements."

Implicit in the meaning of the word as used in the statute here is to draw attention to property which the broker wishes to sell or rent. *See* 2A *Words and Phrases* (permanent ed. 1955) "advertising" at 280.

The cards mailed out in this case do not fit into §

224 (j). They were a solicitation to buy without commission. There is no evidence of any kind in the record to show that they were in any way false or misleading. The requirement relative to a broker's name is that if he advertises a property for sale or for rent he shall disclose his name and the fact that he was an agent or a broker. It is obvious that none of the facts found by the Commission support a conclusion that Grosman violated this section.

It will be noted that the mandate of Article 7 of the code of ethics is but little different from that of § 224 (j). If the card in question were advertising there is no intimation from the evidence that Grosman failed in it to present "a true picture," but it is not advertising and therefore does not fall within the requirement that the licensee disclose his name when he advertises.

With that we move to Articles 3 and 10 of the code of ethics. Article 3 requires the licensee "to protect the public against fraud, misrepresentation or unethical practices in the real estate field." There was no finding by the Commission here that there was any fraud or misrepresentation. If it is the concept of the Commission that mailing 130,000 cards is unethical, it failed to say so in its finding of fact, nor has it spelled out a failure upon the part of Grosman "to eliminate in his community any practices which could be damaging to the public or to the dignity and integrity of the real estate profession."

The findings of fact by the Commission do not show any failure on the part of Grosman "to be informed regarding laws, proposed legislation, governmental orders, and other essential information and public policies which affect [the] interests" of "those who place[d] their interests in his care", namely A.E.C.

In short, we find the action of the Commission here to be affected by error of law (its apparent conception of the holding of § 224 (j) of Article 56), and unsupported by competent, material, and substantial evidence in view of the entire record as submitted as to paragraphs 3, 7, and 10 of the code of ethics of the Commis-

sion, grounds under § 255 (g) of Article 41 for reversal of the Commission's action.

> *Order reversed and case remanded to the Superior Court of Baltimore City for entry of an order reversing the Real Estate Commission; appellee to pay the costs.*