## ZEITSCHEL *v.* BOARD OF EDUCATION OF CARROLL COUNTY

[No. 89, September Term, 1974.]

*Decided March 3, 1975.*

70

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Walter S. Levin,* with whom were *Susan W. Russell* and *Sauerwein, Boyd & Decker* and *H. Morton Rosen* on the brief, for appellant.

*Amicus Curiae* brief filed by Maryland State Board of Education, *Francis B. Burch, Attorney General* and *Malcolm R. Kitt, Special Assistant Attorney General,* on the brief.

*Edward J. Gutman,* with whom were *Blum, Yumkas, Mailman & Gutman* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court. LEVINE and O'DONNELL, JJ., dissent and LEVINE, J., filed a dissenting opinion in which O'DONNELL, J., concurs at page 83 *infra.*

In June 1969, Cheryl Zeitschel was employed by the Board of Education of Carroll County (the County Board) under a "teacher's contract" which provided, in effect, that it would continue from year to year, but that for a period not longer than two years, Miss Zeitschel would be a non-tenured and probationary teacher whose employment could be terminated by the County Board, without cause, at the end of the first or second year by written notice given not later than May 1 of such school year. The contract was in the form prescribed by Bylaw 621:2 of the State Board of Education (the State Board); under its provisions, a probationary

teacher whose employment was not terminated at the end of the first or second year would become a tenured teacher not subject to discharge except for cause.[1] The contract was made subject to the provisions of the Public School Law, Maryland Code (1957, 1969 Repl. Vol.) Art. 77, § 114, authorizing the County Board, upon recommendation of the County Superintendent of Schools, to suspend or dismiss any teacher "for immorality, misconduct in office, insubordination, incompetency, or wilful neglect of duty," provided notice and opportunity to be heard was given.

By report dated March 24, 1970, Miss Zeitschel's principal concluded that she "has had a relatively successful first year" and "shows fine potential." However, on December 9, 1970, Miss Zeitschel and another teacher, Mrs. Davis, were suspended by the County Board on the recommendation of the County Superintendent of Schools, George E. Thomas. The Superintendent also recommended that both teachers be dismissed for immoral conduct and misconduct in office, pursuant to Code, Art. 77, § 114. After a hearing, the County Board, on April 14, 1971, determined there was insufficient evidence to support the charge of immorality, but that misconduct warranting disciplinary action had been proven. In its opinion, the County Board stated, without detailing the specific acts on which its findings were based, that the misconduct consisted of (1) unprofessional and unethical conduct, (2) lack of judgment, (3) deviation in behavior from that expected of a teacher in relation to her pupils, (4) refusal to follow the advice of her superiors with respect to such acts, and (5) exhibition of behavior and conduct not in the best interests of the county school system. The County Board declined, however, to follow the Superintendent's dismissal recommendation; instead it ordered both teachers suspended without pay from December 9, 1970, the date of their original suspension, until April 15, 1971, and further ordered that they be reassigned to different schools. Because Mrs. Davis had tenure and a previous record of satisfactory performance, and because a number of parents had testified

---

1. *See* Parker v. Board of Education of Prince George's County, Md., 237 F. Supp. 222 (D. Md. 1965), *aff'd*, 348 F. 2d 464 (4th Cir. 1965).

on her behalf, the County Board said that she was "deserving of another chance." Regarding Miss Zeitschel, the Board said:

". . . [her] case is somewhat different in that she does not have tenure and no such witnesses appeared in her behalf. The Board, however, feels that because most of the acts which it found constituted sufficient ground for disciplinary action were done in concert, it would be inequitable to mete out to her greater punishment than to Mrs. Davis . . . ."

Miss Zeitschel returned to teaching at another school on April 15, 1971. On April 19, 1971, the principal of Hampstead Elementary School where Miss Zeitschel had taught before her suspension completed a "teacher evaluation" record covering Miss Zeitschel's service until the time of her suspension on December 9, 1970. While he marked her performance as "satisfactory" in each of the "rating elements" contained on the form, the principal concluded that " [i]n view of all developments . . . and in fairness to Miss Zeitschel and to school patrons, re-employment for reassignment to Hampstead School cannot be recommended."

Approximately two weeks after her suspension had been terminated, Miss Zeitschel received a letter dated April 26, 1971 from the Director of School Personnel, written on County Board letterhead, advising her that " [a]fter consideration by the appropriate professional personnel . . . [her] contract will not be renewed for the 1971-72 school year." The letter carried the notation that it was approved by George Thomas, the County Superintendent of Schools.

After her request for a hearing was denied, Miss Zeitschel appealed the County Board's decision to terminate her contract to the State Board, contending that "the actions culminating in the April 26, 1971 letter were procedurally defective under the Public School Laws of Maryland and the Bylaws of the State Board of Education, and that, in any

event, such decision not to renew her Contract was arbitrary and capricious, under the circumstances of her case." At the hearing before a State Board hearing examiner, the parties stipulated that the April 26, 1971 termination letter was sent to Miss Zeitschel without formal action by the County Board authorizing the Superintendent to do so, but that the action was taken "pursuant to the policies and customs that always were followed in Carroll County in situations of this kind." Miss Zeitschel nevertheless contended that the April 26 letter did not constitute valid notice of termination because it had not been expressly authorized by the County Board. The State Board concluded that the power to terminate a probationary teacher's contract was vested, in the first instance, in the County Board; that the question whether to renew the contract of a probationary teacher "is primarily a professional decision based largely on observation and analysis of a teacher's performance in the classroom"; that the County Board could lawfully delegate the authority to the County Superintendent to terminate the services of a probationary teacher at the end of the first or second year of the probationary period; that the practice authorizing such a delegation was "based on long-standing custom and usage . . . and [the County Board] must be presumed to have delegated to the Superintendent and his staff responsibility for the professional evaluation of probationary teachers and the power to act on a negative evaluation by terminating the services of the teacher." The State Board further concluded, however, that the power delegated to the Superintendent did not authorize him "to second-guess a determination of the County Board"; that in view of the County Board's earlier decision not to dismiss Miss Zeitschel from her employment, and because she had been rated satisfactory in every respect by her principal, "no other conclusion [could be reached] but that the Superintendent's decision to terminate the services of Petitioner was not based on a professional evaluation of her general performance as a teacher but was based solely on the issues and circumstances which had been considered by the County Board . . . and . . . decided by it on April 14, 1971." Holding that the power delegated to the Super-

intendent and his staff "is the power to make a comprehensive professional evaluation of the teacher's performance in that area of endeavor which cannot reasonably be expected to be scrutinized by the [County] Board . . . and to make a decision thereon," the State Board said:

> "But in the case before us the Superintendent appears to have made his decision not on the basis of an evaluation of the facts within his area of special competence but by considering once again the facts developed in a case considered and decided by the [County] Board. The Board said on April 14, 1971 that it would be inequitable to mete out greater punishment to Miss Zeitschel than to Mrs. Davis. It is not within the implied powers of the Superintendent to negate that determination on April 26, 1971. As he was basing his decision on the facts considered by the Board, he should have gone back to the Board for formal action in this matter. His failure to do so makes his action *ultra vires*."

Finding that Miss Zeitschel's contract was never validly terminated, the State Board ordered that she be reinstated with tenure and back pay.

The County Board appealed to the Circuit Court for Carroll County, pursuant to the provisions of the Administrative Procedure Act, Code (1971 Repl. Vol.) Art. 41, § 255. The court remanded the case for the taking of evidence on the issue whether the County Board had in effect ratified the Superintendent's action by subsequently denying Miss Zeitschel a hearing. Thereafter, before a State Board hearing examiner, evidence was adduced showing that in the latter part of May 1971, the County Board considered and denied Miss Zeitchel's request for a hearing. On that occasion, the Board asked Superintendent Thomas whether he could justify the termination of Miss Zeitschel's contract on facts independent of those connected with the earlier disciplinary hearing, and he assured the Board that

he could. Specifically, the President of the County Board testified:

"Q. What was Dr. Thomas asked in regard to his reasons for the non-renewal, decision of non-renewal?

"A. Well, in light of going through and completing the hearing in this particular case, the Board was somewhat concerned that the Superintendent was doing the right thing, and we asked him pointedly can you justify the denial of a new contract to this particular individual, and he assured us that he could. And that was all right as far as we were concerned.

"Q. Well, did you, did you ask the Superintendent whether his decision not to renew Miss Zeitschel's contract was based upon his comprehensive evaluation of the facts concerning Miss Zeitschel's performance as a teacher?

"A. Yes, this is really what we were after. This is what we wanted him to assure us, that he could justify it on its own merits as opposed to whatever had just taken place as far as the hearing was concerned. And the Board was very much concerned about this because we felt at the time we would probably end up right where we are now and we wanted to be sure that the Superintendent could justify what he was asking. And we, as far as we were concerned that's when his action was ratified."

Under questioning by the hearing examiner, the witness testified that had the Superintendent not given assurances that Miss Zeitschel's contract was terminated for reasons independent of the disciplinary hearing, the County Board would not have accepted the recommendation.

The hearing examiner expressed dismay because the reasons for the termination of Miss Zeitschel's contract had not been delineated by the County Board at the hearing on

the remand. He refused to accept the Superintendent's "bald assurance" that reasons existed for the termination, which were independent of those associated with the suspension hearing. He concluded that the County Board had not ratified the Superintendent's decision to terminate Miss Zeitschel's contract because it did not have full knowledge of the material facts surrounding the termination. In addition, the examiner found that

> " [t]he only evidence offered by the parties at the hearings reflective of Petitioner's job performance showed her to be a satisfactory teacher. ... Although given the opportunity, Respondent either cannot or will not produce evidence to the contrary. Under the circumstances I have no alternative but to conclude that the non-renewal of Miss Zeitschel's contract was an arbitrary and capricious act."

In a brief opinion, the State Board adopted the findings of fact and conclusions of law of the hearing examiner.

In a second appeal to the circuit court, the County Board contended that the State Board's decision was in excess of its authority and unsupported by substantial evidence because:

(1) local board ratification of the County Superintendent's termination of Miss Zeitschel's contract was not necessary because his action was not unauthorized;

(2) in any event, the County Board approved or acquiesced in the Superintendent's decision; and

(3) because a hearing and cause were not required by law for termination of a probationary teacher's contract, the State Board's decision that the termination was arbitrary and capricious was invalid.

The court (Weant, J.) reversed the order of the State Board; it held that Miss Zeitschel, as a probationary teacher, was

not entitled to a hearing and cause before her contract was terminated and that the County Board had upheld the action of the County Superintendent in terminating the contract. The court said:

> "The only thing that distinguishes the non-renewal of Miss Zeitschel's contract from the non-renewal of any other probationary teacher is the fact that Miss Zeitschel had been disciplined by the County Board of Education for misconduct but the Board had ordered that *she should not be terminated for that offense.* The Board *did not say that she should not be terminated for any other reason.* They merely said it would be inequitable to impose greater punishment upon her for her acts of misconduct than had been imposed upon the other teacher with whom she was joined in improper conduct. Thus, for any reason other than her already chastised misdoing Miss Zeitschel remained subject to non-renewal of her contract as would any probationary teacher. The County Board by its action of April 14, 1971, did not grant tenure to Miss Zeitschel. The County Board directed that Miss Zeitschel and Mrs. Davis should be treated equally for their joint venture into misconduct. Consequently, Miss Zeitschel remained a probationary teacher whose contract was subject to termination at the end of the second year with or without cause and without a hearing."
> (Emphasis in original.)

On the question of the County Board's ratification of the County Superintendent's action in terminating Miss Zeitschel's employment, the court said:

> "Obviously the Board was aware that the Superintendent had made the decision not to renew Miss Zeitschel's contract and satisfied itself that the reason for non-renewal was other than the recently conducted disciplinary hearing. If the

County Board had felt that the action of the Superintendent was in conflict with their opinion and directive of April 14, 1971, they had ample opportunity to overrule the Superintendent and either direct renewal of Miss Zeitschel's contract or grant her a hearing. They chose to do neither. They chose instead to uphold the action of the Superintendent. Whether we call this action of the County Board ratification, acquiescence or approval matters not. The Board was aware of the Superintendent's action. They were satisfied that he had reasons other than those which the Board had prohibited. It was not necessary to have these reasons stated."

In this appeal, Miss Zeitschel and the State Board, as amicus curiae, argue that there was sufficient evidence before the State Board for it to conclude that the Superintendent's decision to terminate the contract was based on an improper reason and was therefore unauthorized by the County Board; that the County Board did not ratify the Superintendent's action because it made no inquiry concerning, and thus had no knowledge of, the specific facts underlying his decision to terminate; and that regardless of the authority of the Superintendent to terminate Miss Zeitschel's contract, or the validity of the County Board's ratification of his action, there was sufficient evidence for the State Board to conclude that the County Board acted arbitrarily and capriciously in terminating the contract.

No claim has been made by Miss Zeitschel either in the proceedings below or on appeal that the termination of her probationary employment, without first affording her a hearing, constituted an infringement of her constitutional rights to liberty or property in violation of the principles articulated in *Board of Regents v. Roth*, 408 U. S. 564, 92 S. Ct. 2701, 33 L.Ed.2d 548 (1972) and *Perry v. Sindermann*, 408 U. S. 593, 92 S. Ct. 2694, 33 L.Ed.2d 570 (1972). Neither has the County Board directly challenged the proposition that it

is within the visitorial power of the State Board to review the termination of a non-tenured teacher's contract and reverse the local board's action if it finds that it was arbitrary or capricious. The County Board maintains that its appeal to the circuit court from the State Board's order was taken under the Administrative Procedure Act, Code, Art. 41, § 244 *et seq.* and that under the standards provided in § 255 (g) for judicial review of decisions of administrative agencies, the court could properly reverse the State Board's order if it was shown to be based upon unlawful procedure, or was arbitrary or capricious, or unsupported by substantial evidence on the record considered as a whole, or affected by other error of law. *See Public Service Commission of Maryland v. Baltimore Gas & Electric Co.,* 273 Md. 357, 329 A. 2d 691; *C. & P. Tel. Co. v. Public Service,* 230 Md. 395, 187 A. 2d 475 (1963). Since the law authorizes the County Board to terminate a probationary teacher's contract without a hearing, and without assigning reasons, *Parker v. Board of Education, supra,* and since the record shows that the termination by the Superintendent was based on his "comprehensive evaluation of the facts concerning Miss Zeitschel's performance as a teacher," and was thus within his authority, the County Board says that the State Board's finding that the Superintendent acted without authority, and had no valid reasons for his decision to terminate the contract, was itself an arbitrary and capricious conclusion and, as such, properly reversed by the court.

As we so recently observed in *Virginia Jean Halsey v. Board of Education of Garrett County, Maryland,* 273 Md. 566, 331 A. 2d 306, the Public School Law of Maryland, Code, Article 77, delineates the respective powers possessed by, and the legal relationship existing between, the local school boards and the State Board. "Educational matters affecting the State and the general care and supervision of public education" are entrusted to the State Board by § 2. The State Board is authorized by § 7 to exercise "general control and supervision over the public schools and educational interest of the State." Section

6 provides that the State Board "shall determine the educational policies of the State; . . . [and] shall enact bylaws, rules and regulations for the administration of the public school system, which . . . shall have the force of law." It is further provided in § 6 that the State Board shall "explain the true intent and meaning of the law, and shall decide all controversies and disputes that arise under it, and their decision shall be final."

Section 34 of Article 77 places responsibility for " [e]ducational matters affecting the counties . . . under the control of a county board of education in each county." Section 41 requires county boards of education to "cause the provisions of . . . [A]rticle [77], the bylaws, rules and regulations, and the policies of the State Board . . . to be carried into effect." It is further provided by § 41 that, subject to the provisions of Article 77, and to the bylaws, rules and regulations of the State Board, the county board "shall determine . . . the educational policies of the county school system and shall prescribe rules and regulations for the conduct and management of the public schools in the said county school system." Among specific powers vested in county boards are the appointment and removal of all teachers. §§ 54, 62, 114. Section 68 (a) provides that the qualifications and tenure of teachers shall be determined by the county boards of education. Section 58 provides that the county superintendent of schools shall be the executive officer of the County Board and shall be responsible for carrying out the policies of the County Board.

In *Wilson v. Board of Education,* 234 Md. 561, 565, 200 A. 2d 67, 69 (1964), we said that the totality of these statutory provisions "invests the State Board with the last word on any matter concerning educational policy or the administration of the system of public education." We there referred to the statutory authority of the State Board (citing *Wiley v. School Commissioners,* 51 Md. 401 (1879) and other cases) as " 'a visitatorial power of the most comprehensive character.' " 234 Md. at 565. While we have never had occasion to define the term "visitatorial" in the context of its meaning in the field of public education, in *Peter v.*

*Prettyman,* 62 Md. 566, 576 (1884), a case involving the visitorial [2] power of circuit court judges over clerks of circuit courts under Article IV, § 10 of the Constitution of Maryland, we described the power as one of supervision, regulation and direction. We think it beyond question that the power of visitation vested in the State Board is one of general control and supervision; it authorizes the State Board to superintend the activities of the local boards of education to keep them within the legitimate sphere of their operations, and whenever a controversy or dispute arises involving the educational policy or proper administration of the public school system of the State, the State Board's visitatorial power authorizes it to correct all abuses of authority and to nullify all irregular proceedings. *See Dartmouth College v. Woodward,* 17 U. S. (4 Wheat.) 518, 673 (1819) (concurring opinion of Mr. Justice Story); *Guthrie v. Harkness,* 199 U. S. 148, 158 (1905); 47 Op. Att'y Gen. 88 (1962) and authorities cited therein. But the State Board's visitatorial power is not without limitations. It cannot be exercised fraudulently, in bad faith, or in breach of trust; neither can it be asserted to finally decide purely legal questions or exercised in contravention of statute. *Halsey v. Board of Education, supra.*

While the State Board may properly inquire into the reasons for the County Board's decision to terminate Miss Zeitschel's contract in order to correct abuses of authority and irregularities pertaining to education and specifically to the matter of teacher evaluation, it cannot exercise its visitatorial power arbitrarily to alter a decision of the County Board lawfully made in conformity with a State Board bylaw itself having the force of law. There was probative evidence to indicate that the Superintendent's decision to terminate Miss Zeitschel's services was based upon his comprehensive professional evaluation of her general performance as a teacher. There was evidence to indicate that the County Board was so satisfied, and that the Superintendent's decision was not based on the same

2. The terms "visitorial" and "visitatorial" are used interchangeably.

reasons which supported Miss Zeitschel's earlier suspension. No evidence was adduced from which a contrary inference could properly be drawn. That the Superintendent had earlier recommended Miss Zeitschel's dismissal for cause, and that recommendation was rejected by the County Board, and because Miss Zeitschel's principal had given her a satisfactory rating up to December 9, 1970 does not justify the inference drawn by the State Board that the Superintendent's evaluation was based on improper considerations. Nor does the fact that the Superintendent did not testify at the hearing on remand and articulate his reasons for terminating the contract justify an inference that he acted improperly; the sole issue at that hearing was whether the termination "was done with the approval of the County Board or was ratified by that agency," an issue not implicating the reasons underlying the Superintendent's action or requiring that he testify and set them out. We agree with the decision of the lower court which concluded, in effect, that there was no substantial evidence before the State Board on the record considered as a whole to support its determination that the County Board's action in terminating Miss Zeitschel's contract was unlawful or unreasonable. We are, of course, mindful of the principle that a court should not substitute its judgment for the expertise of the administrative agency from which an appeal is taken, *Grosman v. Real Estate Comm'n,* 267 Md. 259, 297 A. 2d 257 (1972), and that this is especially true in matters involving public education, *Bernstein v. Board of Education,* 245 Md. 464, 226 A. 2d 243 (1967). We are also mindful of the admonition set forth in *Insurance Comm'r v. Nat'l Bureau,* 248 Md. 292, 236 A. 2d 282 (1967), that in reviewing decisions of administrative agencies, the court's appraisal or evaluation must be of the agency's fact-finding results and not an independent original estimate of or decision on the evidence, and that the required process requires restrained and disciplined judicial judgment so as not to interfere with the agency's factual conclusion where supported by evidence. In effect, judicial inquiry is limited to deciding whether on the record the State Board could reasonably

make the finding it did, it being clear, as stated in *Snowden v. City of Baltimore,* 224 Md. 443, 168 A. 2d 390 (1961):

> "The heart of the fact finding process often is the drawing of inferences from the facts. The administrative agency is the one to whom is committed the drawing of whatever inferences reasonably are to be drawn from the factual evidence. 'The Court may not substitute its judgment on the question whether the inference drawn is the right one or whether a different inference would be better supported. The test is reasonableness, not rightness.' Davis, *op. cit.,* Sec. 29.05, p. 139."
> 224 Md. at 448.

We hold only that the State Board's order in this case was not supported by evidence and in the circumstances was arbitrary and capricious and properly reversed by the lower court.

> *Order affirmed; costs to be paid by appellant.*

*Levine, J., dissenting:*

Because the issue here is one properly within the visitatorial power of the State Board of Education, I respectfully dissent.

As the majority in this case correctly observes, the statutory authority of the State Board is " 'a visitatorial power of the most comprehensive character.' " *Wilson v. Board of Education,* 234 Md. 561, 565, 200 A. 2d 67 (1964); and "the totality of these statutory provisions [of Article 77] 'invests the State Board with *the last word* on any matter concerning *educational policy or the administration of the system of public education.*' " (emphasis added).

As early as *Shober v. Cochrane,* 53 Md. 544 (1880), this Court affirmed the State Board's power over local school employees. In that case, Cochrane had been the secretary, treasurer and examiner of the county school commissioners

until they removed him and replaced him with Shober. Contrary to the decision of the local school commissioners, the State Board decided that the position belonged to Cochrane, and this Court upheld the State Board's authority over the matter. A similar result was reached in *Underwood v. School Board,* 103 Md. 181, 63 A. 221 (1906), where our predecessors, in holding that the State Board had the power to determine which of two persons should be recognized as a teacher of a school, stated, "There can be no doubt that the State Board had power to *advise* the County Board, and that it was the duty of the latter to follow the advice of the State Board on the subject." 103 Md. at 188 (emphasis in original).

This doctrine was followed in *Zantzinger v. Manning,* 123 Md. 169, 90 A. 839 (1914), a case in which the State Board had decided that a teacher was improperly dismissed and should be reinstated:

> ". . . In the case at bar the dispute is 'between functionaries of the department of public education' ; the question to be determined is 'which of two persons shall be recognized as a teacher of a school,' and the issue is clearly one involving the proper administration of the public school system. The School Commissioners' control of high schools, and their authority to appoint the principals of said schools is subject to the provisions of the public school law of the State, and to the summary and comprehensive visitatorial power conferred by that law upon the State Board. . . ." 123 Md. at 181-82.

Similarly, in *School Com. of Car. Co. v. Breeding,* 126 Md. 83, 90, 94 A. 328 (1915), this Court said:

> "Cases may arise where a purely legal question is involved, as in *Duer v. Dashiell* [91 Md. 660 (1900)], and *School Commissioners v. Henkel,* 117 Md. 97, and which the Court has power to determine, but where the dispute is between 'functionaries of the department of public education,' or a question of school administration is involved this Court has refused to decide it. . . ."

Thus, the Court concluded in *Wilson v. Board of Education, supra,* 234 Md. at 565, that

> ". . . [i]n any aspect the problem of screening employees is one of administrative policy, and the mere fact that the solution is initially within the scope of the County Board's authority *does not negative the power of the State Board* to review it and set it aside, as the cases cited demonstrate. . . ." (emphasis added).

*See also Metcalf v. Cook,* 168 Md. 475, 178 A. 219 (1935); *School Commissioners v. Morris,* 123 Md. 398, 91 A. 718 (1914); *Wiley v. School Comm'rs,* 51 Md. 401 (1879). This established line of authority makes it abundantly clear, therefore, that where, as here, the "educational policy or the administration of the system of public schools" is involved, the State Board possesses the authority to issue orders which the County Board must follow.

In the present case, as the majority has noted, the State Board found that:

> ". . . no other conclusion [could be reached] but that the Superintendent's decision to terminate the services of Petitioner was not based on a professional evaluation of her general performance as a teacher *but was based solely on the issues and circumstances which had been considered by the County Board . . . and . . . decided by it* on April 14, 1971." (emphasis added).

When the County Board had met for the purpose of determining whether Miss Zeitschel's contract was terminated for reasons independent of the disciplinary hearing, the Superintendent had merely asserted that he possessed such reasons, without specifying what they were. In light of the suggestion that the termination was based on improper grounds, *viz.,* the prior charge of misconduct, the hearing examiner for the State Board, whose findings of fact and conclusions of law were adopted by that Board, was dismayed that the reasons for the termination of Miss

Zeitschel's contract had not been delineated by the County Board. He consequently refused to accept the Superintendent's "bald assurance" that reasons existed, independent of those associated with the suspension hearing, for the termination. Hence, the State Board ordered that Miss Zeitschel be reinstated with tenure.

I agree, as the majority holds, that it is:

> ". . . beyond question that the power of visitation vested in the State Board is one of general control and supervision; it authorizes the State Board to superintend the activities of the local boards of education to keep them within the legitimate sphere of their operations, and whenever a controversy or dispute arises involving the educational policy or proper administration of the public school system of the State, the State Board's visitatorial power authorizes it to correct all abuses of authority and to nullify all irregular proceedings. . . ."

In the case of probationary teachers, the State Board's power is comprehensive; for while Code (1957, 1969 Repl. Vol.) Art. 77, § 114 grants the county boards the power to suspend or dismiss teachers for "immorality, misconduct in office, insubordination, incompetency, or willful neglect of duty," it specifically provides that "Nothing in this section shall preclude the *State Board of Education* from adopting bylaws providing for a probationary period of employment not to exceed two years." (emphasis added). It is the State Board, therefore, that has the power to regulate and supervise the probationary period, and to settle all disputes that arise out of it. The key question on review, consequently, is whether on the record as a whole, "a reasoning mind reasonably could have reached the factual conclusion" reached by the *State Board. Insurance Comm'r v. Nat'l Bureau*, 248 Md. 292, 309, 236 A. 2d 282 (1967).

In sustaining the termination of Miss Zeitschel's contract, the majority holds, in effect, that there is no evidence upon which the State Board could reasonably have concluded that

the termination was for improper reasons. It is with this view of the facts that I must disagree. The witness for the County Board testified that had the Superintendent not given assurances that Miss Zeitschel's contract was terminated for reasons independent of the disciplinary hearing, the County Board would not have accepted the recommendation; hence the County Board's action rests on the ground that there was such an independent reason. In light of the suggestion that improper factors were considered, however, the State Board was justified, for the following reasons, in concluding that the termination was based on inadequate grounds: that "the only evidence offered at the hearings reflective of petitioner's job performance showed her to be a satisfactory teacher" ; that although given the opportunity, the County Board either could not or would not produce evidence to the contrary; and that no specific reasons for the termination were given.

Since the resolution of this dispute lies within the visitatorial power of the State Board, and since sufficient evidence exists for the State Board to have reasonably reached its conclusion, the judgment of the Circuit Court for Carroll County should be reversed, and the order of the State Board of Education reinstated. Judge O'Donnell authorizes me to state that he concurs in this opinion.