# MONTGOMERY COUNTY *v.* BIGELOW

[No. 26, October Term, 1950.]

414

416

*Decided December 6, 1950.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

MARKELL, J., delivered the opinion of the Court.

This is a review on *certiorari,* on petition of defendant, of a judgment for plaintiff for $203.75 on appeal by defendant from a judgment of a trial magistrate for $75.00. Code, Art. 5, sec. 104. Plaintiff sued to recover moneys collected from it by defendant, as fees for operating taxicabs in Montgomery County, under an ordinance of defendant which was not offered in evidence. The question, if any, presented is whether Montgomery County has authority, under Chapter 941 of the Acts of 1945, to impose upon the owner or operator of a taxicab any registration fee or license fee for operating it in Montgomery County. The lower court held that it has not.

Chapter 941 of the Acts of 1945 is entitled an act to add a new sub-title, "Taxicabs", and three new sections, 1130 A, 1130 B and 1130 C to Article 16, "Montgomery County", of the Code of Public Local Laws, "providing generally for the regulation in Montgomery County of taxicabs and their owners and operators by the County Commissioners" and for regulation of taxicab rates. Section 1130 B, "in order to protect the public health, safety and welfare of the citizens of Montgomery County" and others who may use taxicabs there, authorizes and empowers the county to enact ordinances "providing regulations for the ownership and operation of taxicabs in Montgomery County, and to provide for and fix the requirements for the registration, licensing and inspection of taxicabs, their owners and operators"; and to fix rates. "The regulations herein provided for taxicabs in Montgomery County shall be in addition to any regulations by the Commissioner of Motor Vehicles * * * or the Public Service Commission * * *."

Art. 66½, sec. 1, of the Code, 1947 Supplement, as enacted by the motor vehicles act, Chapter 1007 of the Acts of 1943, and as amended by Chapter 322 of the Acts of 1949, provides: "1. (Applicability.) The provisions of this Article are intended to be State-wide in their effect, and except to the extent that they may be

specifically authorized by other provisions of this Article [or by Public Local Laws providing for the regulation of taxicabs and the operators thereof, heretofore or hereafter enacted], no City, County or other Municipal subdivision of the State shall have the right to make or enforce any local law, ordinance or regulation upon any subject for which provision is made in this Article, nor require any registration or licensing of motor vehicles or operators thereof in addition to the registration and licensing herein prescribed, nor impose upon the owner or operator of any motor vehicle any tax, registration fee, license fee, assessment or charge of any kind for the use of a motor vehicle upon any public highway or highways in this State.

"The provisions of this Article (except as herein otherwise specifically provided) are intended to be exclusive of all local and municipal legislation or regulations, upon the various subjects with which this Article purports to deal, and all Public Local Laws, Ordinances and Regulations inconsistent or identical therewith or equivalent thereto are hereby repealed; and the charters of all Municipal Corporations of this State are modified so as as prohibit such corporations from making or enforcing any ordinance or regulations in violation of this Article. * * *

"No provision of this Article shall be deemed as repealed by any act hereafter passed unless said provision is expressly referred to and repealed in terms or some other clear evidence given of the intent on the part of the General Assembly to change the policy of the State herein declared." The bracketed words are not part of the Act of 1943, but are part of the section as amended in 1949.

In an opinion in a case of *Swisher v. County Commissioners* of Montgomery County, which did not reach this court, the lower court said, in 1948, "Art. 3, Sec. 29 of the Constitution of Maryland provides, 'every law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title.' This

has been passed upon by the Court of Appeals in many cases; we shall refer to only a few. The purposes thereof are twofold: 'The first is to prevent the combination in one Act of several distinct and incongruous subjects; and the second is, that the legislature and the people of the State may be fairly advised of the real nature of pending legislation.' *Kafka v. Wilkinson,* 99 Md. 238, 241, 57 A. 617. 'Publicity and a knowledge of the true effect and operation of every bill brought before the Legislature are the great safeguards against ill-considered and improper legislation.' *State v. Cumberland & Pennsylvania Railroad Co.,* 105 Md. 478, 484, 66 A. 458. Ch. 941 of the Acts of 1945 makes no reference in the title to the fact that a settled and often stated policy of the State is modified and changed in body thereof; but, under the guise of local legislation, without any reference thereto in the title, the same is accomplished. This Act (House Bill 735) was referred to, and received a favorable report from, a special committee in the Senate, and the local delegation in the House (those usually appointed after a reading of the title for local legislation). 1945 House Journal p. 1399; 1945 Senate Journal p. 1210. Had the state-wide aspect of this legislation appeared in the title, it, properly, would have been referred to the Judicial Proceedings Committees of both branches, where it would have received a careful and painstaking consideration by these Standing Committees for state legislation. We feel the failure to mention such an important and vital matter of state-wide interest is fatal to that particular portion of the Act: that which provides the *regulations* shall be in addition to those of the Commissioner of Motor Vehicles. We will also hold that this omission, in addition to the law as hereinafter referred to, makes ineffectual any provisions in the ordinance that contravene Article 66½ of the Code, or deal with subjects for which provision is made in said Article. This does not apply, in our opinion, relative to the Public Service Commission, because Sec. 367, of Art. 23, seems to make its regulations

supplementary to, rather than exclusive of, laws and ordinances." This reasoning (but not the application of it to the facts or the conclusions in the three sentences last quoted) is similar to the reasoning and decision of this court in the recent case of *Bell v. Board of County Com'rs of Prince George's County*, 195 Md. 21, 26, 72 A. 2d 746, 748, in which we held unconstitutional an act "relating to the licensing of coin operated mechanical or electrical amusement devices or machines in Prince George's County," which in fact repealed *pro tanto* the general criminal laws against gambling, as applied to slot machines in Prince George's County. We think, however, that neither our decision in the *Bell* case nor the reasoning of the court in the *Swisher* case supports the conclusions in the last three sentences quoted. The provision in section 1130 B that the regulations shall be in addition to those of the Commissioner of Motor Vehicles, we think, has the same meaning as the words in Art. 23, sec. 367, relating to the Public Service Commission, viz., "supplementary to, and *not in substitution for*." The provision in question is a disclaimer, not an assertion, of any grant of power to set aside regulations under the motor vehicles act. The title of the Act of 1945 states the subject of the act, "regulation * * * of taxicabs and their owners and operators," which necessarily includes licensing, perhaps the commonest form of regulation. Any uncertainty as to whether or not the act "change[s] the policy of the State" declared in the motor vehicles act arises not out of any defect in the title but out of uncertainty as to whether or not regulation of taxicabs is a "subject for which provision is made" in Art. 66½, or a fee for operating taxicabs is a fee "for the use of a motor vehicle upon any public highway or highways in this State." The uncertainty is not as to the title of the Act of 1945, but as to the scope of the motor vehicles act. The Act of 1945 is not, in whole or in part, unconstitutional under Art. 3, sec. 29 of the Maryland constitution.

Plaintiff, for reasons not made clear, seems anxious to disclaim reliance on the *Swisher* case and asserts that all references to that case "should be disregarded" by us. He asserts "that the validity of [the Act of 1945] was not in issue in [the instant] case—the court merely held that it conferred upon Montgomery County no authority to impose registration or license fees or charges of any kind, upon owners or operators of taxicabs in Montgomery County." He contends that any such authority is denied by the very Act of 1949 [*supra*] which amended Art. 66½, sec. 1, so as expressly to except from the ban of the state-wide policy "Public Local Laws providing for the regulation of taxicabs and the operators thereof, heretofore or hereafter enacted". This particular contention is based on an ungrammatical reading, which does not make sense. The exception, like the exception in the original act, is plainly applicable to all the rest of the sentence and cannot be restricted (as plaintiff attempts to do) to the first of the three "rights" denied in that sentence. The preamble of the Act of 1949 recites that uncertainty has been expressed as to whether Article 66½ was intended to include all the provisions for the regulation of taxicabs, this doubt having arisen in connection with the construction of Chapter 941 of the Acts of 1945, relating to taxicabs in Montgomery County. Section 2 of the Act declares "that it was not the legislative intent that Article 66½ should preclude the enactment of local laws for the regulation of taxicabs and taxicab operators", and also provides that no public local laws heretofore enacted and no municipal ordinance or regulation heretofore adopted or passed under authority comprised by any such laws, relating to the regulation of taxicabs, shall be deemed to be invalid on the ground that such acts contravened the policy of the state as to regulation of taxicabs and operators. It is thus clear that since June 1, 1949, Art. 66½, sec. 1 expresses no policy against local regulation of taxicabs. The legislature, however, had no power in 1949 to determine the proper construction of the Act

of 1943. *Marburg v. Mercantile Building Co.*, 154 Md. 438, 443, 140 A. 836. As the ordinance involved in the instant case is not actually before us, we cannot decide whether or not section 2 of the Act of 1949 could be construed, and could be valid, as retroactively ratifying the ordinance.

On the other hand, the Act of 1943 is pertinent, if at all, only to the extent that it may throw light upon the construction of the Act of 1945, and not in any event as "precluding the enactment" of any local legislation by the legislature itself. The legislature cannot by statute "preclude" the repeal of any statute by a subsequent legislature. Art. 66½, sec. 1, in the last sentence above quoted, provides that no provision "shall be deemed as repealed" unless "clear evidence [is] given of the intent * * * to change the policy of the State". In legal effect, this is no more than a statement of policy and an emphatic statement of the ordinary rule of construction against repeal by implication. If, however, words which seem more peremptory than these are clearly inconsistent with subsequent legislation, the subsequent legislation is not invalidated but repeals *pro tanto* the provision against repeal. *Herman v. Mayor and City Council of Baltimore*, 189 Md. 191, 194-195, 55 A. 2d 491, 173 A. L. R. 1310; *Atkinson v. Sapperstein*, 191 Md. 301, 310, 60 A. 2d 737, 740; *Elgin v. Capitol Greyhound Lines*, 192 Md. 316-317, 64 A. 284, 290-291. Cf. Sutherland on Statutory Construction, (3d Ed.) §§ 3001-3004.

If two legislative acts can reasonably be construed together so as to give effect to both, such a construction is to be preferred. We need not consider whether the Act of 1945 would be susceptible of any narrowing construction so as to conform with a statement of policy in Art. 66½, sec. 1. We are satisfied that, within the meaning of Art. 66½, sec. 1, regulation of taxicabs is not a "subject for which provision is made in" Art. 66½, and registration and license fees in such regulation are not charges "for the use of a motor vehicle upon any public highway or highways in this State." Any doubt

as to the meaning of the words of section 1 in this respect is dispelled by consideration of its history and its contemporaneous legislative construction. Section 1 originated in the first section of the first motor vehicles act, Acts of 1916, c. 687. The second sentence above quoted (repealing local laws and powers) was new in 1943; the third sentence is substantially unchanged since 1916; in the first sentence the operative words (including the reference to charges for the use of a motor vehicle upon a highway) are the same, as far as they went in 1916, but the subject matter is broadened. From 1916 till 1943 the statement of state-wide policy was directed against local regulation "which shall * * * affect the speed limits prescribed by this sub-title, require any registration or licensing of motor vehicles or operators thereof in addition to the registration and licensing herein prescribed, or impose upon the owner or operator of any motor vehicle any tax, registration fee, license fee, assessment or charge of any kind for the use of a motor vehicle upon any public highway or highways of this State," with a proviso permitting local "reasonable traffic regulations", not involving "any charge of any kind for the use of their highways" [other than reasonable parking charges, by amendment in 1929]. Code of 1939, Art. 56, sec. 145. In 1943 the reference to speed limits was broadened to "any subject for which provision is made in this Article." The reference to charges "for the use of a motor vehicle upon any public highway," unchanged since 1916, is patently only a part of a statement of policy against local duplication of (a) statewide registration and licensing and (b) fees therefor. In 1916 registration and licensing fees were more important to the state as a source of revenue, than they now are, and to the motor vehicle owner also duplication was a serious menace. In 1943 regulation of taxicabs (as distinguished from other motor vehicles) was not a subject for which any provision was made in Article 66½.

In England and America, regulation of hackmen and their charges was one of the oldest kinds of rate regula-

tion. *Munn v. Illinois,* 94 U. S. 113, 125, 24 L. Ed. 77. In Baltimore regulation of taxicabs is much older than taxicabs. Code of Public Local Laws (1860) Art. 4, secs. 140-148; (1888) Art. 4, secs. 132-144. In 1910 hackney carriage was defined by statute so as to include a taxicab, and the Police Commissioners were empowered to designate public or private cab stands. Acts of 1910, ch. 109; *G. I. Veterans' Taxicab Ass'n, Inc. v. Yellow Cab Co.,* 192 Md. 551, 556, 65 A. 2d 173, 175-176. On the same day on which the first motor vehicles act (Acts of 1916, ch. 687) was approved, which prescribed, among others, license fees for motor vehicles operating for transporting persons for hire (other than those spefied in Chapter 610) upon public highways (Code of 1939, Art. 56, sec. 157) another act was approved (Acts of 1916, ch. 610, Code of 1939 and 1947 Supp. Art. 56, sec. 293) regulating licensing, and fees therefor, of motor vehicles to be used in certain public transportation of passengers for hire. It was held that there was no conflict, between the two acts, which would render either or both of them void. *Smith v. State,* 130 Md. 482, 485, 100 A. 778. By Chapter 677 of the Acts of 1920 the Public Service Commission law was amended so as to include regulation of taxicab rates and service. Code 1939, Art. 23, sec. 361. By Chapter 485 of the Acts of 1931, Code of 1939, Art. 23, secs. 361-367, the Public Service Commission law was further amended so as to require a permit from the commission for the operation of any taxicab in a city of more than 50,000 persons, with a reservation to cities and towns of power "to adopt reasonable traffic regulations, including the designation of taxicab stands", and power to limit or prohibit cruising. Art. 23, sec. 367. By Chapter 411 of the Acts of 1943, approved the same day as the present motor vehicles act (Acts of 1943, ch. 1007) a taxicab bureau in Baltimore was created and provision was made (including specified registration and license fees) for the registration and licensing of drivers and the registration of taxicabs in Baltimore. Baltimore City Charter (1949 Edition) secs.

204-220. [Whether in view of the Home Rule Amendment this statute is valid is a question not before us. *G. I. Veterans' Taxicab Ass'n, Inc. v. Yellow Cab Co., supra.*] A few days earlier two acts were approved, one for the regulation of taxicabs and their owners and operators in Prince George's County (Acts of 1943, ch. 376) the other for the licensing and regulation of taxicabs and their owners and operators in Annapolis. Acts of 1943, ch. 663. In 1945 and 1947 eight more acts were enacted to regulate taxicabs, in Baltimore County, (Acts of 1945, ch. 323), Frederick City (Chapter 500), Wicomico County (Chapter 671), Montgomery County (Chapter 941), Prince George's County (Acts of 1947, ch. 712, amending the act of 1943), Havre de Grace (Chapter 745), Howard County (Chapter 759) and Bel Air (Chapter 816). For what it is worth, the Act of 1949 stated the legislature's interpretation of all this antecedent legislation. Whether, in making taxicab regulation an "exception" to a general statement which did not include it, the legislature, by the Act of 1949, has broadened the general statement for the future, is a question not now before us.

The history of taxicab regulation in Maryland shows that both before and since the enactment of the present motor vehicles act in 1943 such regulation has not been a state-wide or unified system and has not at any time been covered in the motor vehicles act. In addition to the requirement of registration and licenses under the motor vehicles act, the taxicab business in Baltimore is subject to four other kinds of regulation, as to cab stands by the Police Commissioner, as to rates and owners, and also as to permits, by the Public Service Commission, and as to taxicabs and operators by the taxicab bureau. This is an illustration (not the only one) of the wide difference between regulation of or charges for (*a*) use of motor vehicles on highways and (*b*) conduct of a business which requires use of motor vehicles on highways. *Cf. Atkinson v. Sapperstein, supra.*

Contemporaneous legislative construction of Art. 66½, sec. 1, is unusually significant because it is really contemporaneous, not wholly subsequent. The repeal provision (second sentence) is as broad as the statement of statewide policy in the first sentence. If the first sentence covers taxicab regulation, the second also does and repeals the Prince George's County and Annapolis acts approved a few days before and the Baltimore act approved the same day as the motor vehicles act. The only conclusion is that by the true construction of Art. 66½, sec. 1, the legislative intent was consistent with the three local acts approved the same day or a few days before and the eight acts enacted in 1945 and 1947.

Plaintiff contends that the fees exacted from him were unlawful because, aside from the provisions of Art. 66½, sec. 1, "licensing", under the Act of 1945, does not include power to impose license fees to raise revenue that bears no reasonable relation to the expense of regulation. *Mayor & City Council of Baltimore v. Canton Co.*, 186 Md. 618, 631-632, 47 A. 2d 775. We cannot pass upon the validity of fees under the ordinance, which is not before us, and we should not in this respect undertake to construe the Act of 1945 in a vacuum.

Whether or not the payments made by plaintiff were voluntary, is not before us. *Wasena Housing Corp. v. Levay*, 188 Md. 383, 387-388, 52 A. 2d 903; *Magness v. Loyola Federal Savings & Loan Association*, 186 Md. 569, 580, 47 A. 2d 769. No evidence is before us, and defendant expressly abandons this defense.

Plaintiff contends that no question at all is properly before us for review because the record does not show any objection below by defendant to any rulings on the prayers. Rule 17 provides, "Formal exceptions to rulings or orders of the court are unnecessary; but for all purposes for which an exception has heretofore been necessary it is sufficient that a party at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and

his grounds therefor; * * *." Plaintiff and defendant each offered a prayer for a directed verdict. Plaintiff's prayer was granted, defendant's refused. As all prayers presumably were offered and ruled on at the same time, defendant's prayer necessarily amounted to an objection to plaintiff's prayer. Defendant thus, "at the time the ruling of the court was sought and made, make known to the court the action which he desired the court to take and his objection to the action of the court and (at least by all the prayers) his grounds therefor."

*Judgment reversed, and case remanded for a new trial.*