840 A.2d 728

BALTIMORE TEACHERS UNION, AMERICAN FEDERATION
OF TEACHERS, LOCAL 340, AFL–CIO

v.

MARYLAND STATE BOARD OF EDUCATION, et al.

No. 120, Sept. Term, 2000.

Court of Appeals of Maryland.

Jan. 16, 2004.

Joel A. Smith (Keith J. Zimmerman, Kahn, Smith & Collins, P.A., on brief), Baltimore, for petitioner/cross-respondent.

Donald B. Verrilli, Jr. (Elizabeth A. Cavanagh, Jenner & Block, LLC, on brief), Valerie V. Cloutier, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty Gen., on brief), for respondents/cross-petitioners.

Argued before BELL, C.J., and ELDRIDGE,* RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, JJ.

ELDRIDGE, J.

Baltimore Teachers Union, American Federation of Teachers, Local 340, AFL–CIO, filed in the Circuit Court for Baltimore City a complaint for a declaratory judgment and injunctive relief, alleging that the Maryland State Board of Education lacked statutory authority to enter into a contract with Edison Schools, Inc. for the operation and management of three Baltimore City public elementary schools. The Circuit Court held that the State Board acted within its statutory authority conferred by the General Assembly. Before argument in the Court of Special Appeals, the Union filed in this Court a petition for a writ of certiorari. We granted the petition and shall affirm.

I.

Governance of the Maryland public school system is two-tiered. The Maryland State Board of Education is the head of the State Department of Education, a principal department of the State government. Maryland Code (1978, 1999 Repl.Vol.), §§ 2–101 and 2–102 of the Education Article. Twenty-three county boards of education and the New Baltimore City Board of School Commissioners (the "New Board") operate as the

---

* Eldridge, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

statutory heads of the twenty-four local public school systems.[1] The State Board is charged with the general supervision of the Maryland public schools, including the development and implementation of educational policies. § 2–205 of the Education Article.[2] The State Board is authorized to adopt rules and regulations for the administration and enforcement of the education law. § 2–205(c). In 1993, the Board promulgated regulations establishing public school performance standards that were adopted and codified in the Code of Maryland Regulations (COMAR) 13A.01.04.01–.08. Regulation .01 establishes the scope of the regulations and regulation .02 is the definition section. The student performance areas tracked by the State are set forth in regulation .03. Regulation .04 establishes the standards that apply to the student performance areas. Regulation .05 sets out the reporting requirements, and the mandate that each public school develop a school improvement plan is set forth in regulation .06.

The regulations further set forth a two-phased process for public schools that fail to meet the prescribed student performance standards. Regulations .07 and .08 describe "local reconstitution" where, if a school fails to meet all standards at a level of satisfactory or better in the student performance areas, the State Board may require the overall program and

---

1. In *Board of Education of Prince George's County v. Waeldner*, 298 Md. 354, 360–361, 470 A.2d 332, 335 (1984), this Court described the relationship between the State Board and the local boards:

 "The totality of these provisions has been described as a visitatorial power of such comprehensive character as to invest the State Board 'with the last word on any matter concerning educational policy or the administration of the system of public education'.... In *Zeitschel, supra*, 274 Md. at 81, 332 A.2d 906, we said: '[T]he power of visitation vested in the State Board is one of general control and supervision; it authorizes the State Board to superintend the activities of the local boards of education to keep them within the legitimate sphere of their operations, and whenever a controversy or dispute arises involving educational policy or proper administration of the public school system of the State, the State Board's visitatorial power authorizes it to correct all abuses of authority and to nullify all irregular proceedings.' "

2. Hereafter, all references to sections of the Maryland Code will be to the Education Article, unless otherwise specified.

management of a school to be placed under the direct control of the local school board.[3] By February 2000, the State Board had ordered 97 schools throughout Maryland to be placed under local reconstitution. Of these, 83 schools were in Baltimore City.

If a school under local reconstitution fails to show sufficient improvement, regulation .10 provides for "state reconstitution" by which the State Board determines the overall program and management of the school. In 1999, the State Board reconstituted three of the lowest performing public elementary schools in Baltimore City, Furman L. Templeton, Montebello, and Gilmor. Student performance remained stagnant at these elementary schools despite being under local reconstitution for at least three years. No more than 10% of the students at the schools had met the State's standard in all student performance areas in any year since 1993 when the school performance regulations were adopted.

The State Board examined the feasibility of closing one or more of the underperforming elementary schools. The Board determined that any closure would result in increased transportation costs and the transfer of students to other low performing public schools already under local reconstitution. The Board concluded that the most viable option was to contract out the operation and management of the three schools to a third party.[4] Following a request for proposals in accordance with the State procurement procedure, the State Board and the New Board entered into a "Contract for the

---

**3.** COMAR 13A.01.04.02B(8) states:
 "(8) Reconstitution.
 (a) 'Reconstitution' means changing one or more of a school's:
 (i) Administration;
 (ii) Staff;
 (iii) Organization; or
 (iv) Instructional program.
 (b) 'Reconstitution' may include contracting with a third party as provided in Regulation .07 of this chapter."

**4.** COMAR 13A.01.04.02B(10) provides:
 "(10) 'Third party' means an entity, public or private, who is not managing the school at the time of a reconstitution decision."

Operation and Management of Schools Under State Reconstitution in Baltimore City" with Edison Schools, Inc., for a term of five years.[5] The contract with Edison was approved by the Maryland Board of Public Works on March 22, 2000.

Edison is a private company specializing in the management of public schools. It operates under contracts with local school districts and boards of charter schools. Pursuant to its contract with the State Board, Edison is required to provide the three public elementary schools with curriculum and curriculum development, instructional services, instructional and support personnel, teaching tools, special education and related services, educational services with limited or no English proficiency, and other services which may be necessary. Edison serves as the employer of all employees hired for the elementary schools and is responsible for providing management and professional development for all personnel working in the three schools. Edison has the power to hire, assign, discipline, and dismiss all personnel hired at the schools.

The Baltimore Teachers Union initiated the present action in the Circuit Court for Baltimore City against the State Board and the New Board. The gist of the Union's action was set forth in the beginning of its complaint as follows:

"1. This is an action for declaratory judgment, injunctive and equitable relief. The facts and claims in this action are solely a matter of statutory law and turn on the authority of the Maryland State Board of Education ('MSBE') and the New Baltimore City Board of School Commissioners ('Local Board') as granted by the State legislature.

"2. Plaintiff shall request that the Court find that MSBE acted *ultra vires* in its promulgation of C.O.M.A.R. 13A.01.04.08. and 13A.01.04.02(B)(8)(b)."

The State Board and the New Board filed motions to dismiss the complaint for lack of standing. Alternatively, the State

---

**5.** The New Baltimore City Board of School Commissioners was created by the General Assembly in 1997 as part of a new partnership between Baltimore City and the State "to improve the quality of public education in Baltimore City." § 4–303(a) of the Education Article.

Board moved for summary judgment, maintaining that the Board acted within the scope of its statutory authority by promulgating the challenged regulations and contracting with a private vendor for the operation of the three elementary schools. The Union filed a cross-motion for summary judgment. Edison filed a motion to intervene which was unopposed.

Following a hearing, the Circuit Court issued an order declaring that the Union had standing, that the challenged regulations were within the State Board's statutory authority, and that the two Boards were statutorily authorized to enter into the contract.

The Union filed a notice of appeal to the Court of Special Appeals, and the State Board filed a cross-appeal on the standing issue. Prior to argument in the intermediate appellate court, the Union filed in this Court a petition for a writ of certiorari which we granted. *Baltimore Teachers v. State Board of Education*, 362 Md. 359, 765 A.2d 142 (2001). The petition presented the single question of whether the challenged regulations and contract were authorized by the General Assembly.

## II.

As a threshold matter, we must first consider whether the Baltimore Teachers Union had standing to challenge the reconstitution regulations and the Edison contract. The respondent State Board filed a motion to dismiss the Union's complaint for declaratory judgment on the ground that the Union lacked standing to bring the instant matter, and the Board's cross-appeal challenges that portion of the declaratory judgment upholding the Union's standing. *See Joseph H. Munson Co. v. Secretary of State*, 294 Md. 160, 168, 448 A.2d 935, 939 (1982), *affirmed*, 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984).

The Board argues that for an organization like the Union to have standing "to bring a judicial action, it must ordinarily have a 'property interest of its own ... separate and distinct

from that of its individual members.' " *Medical Waste Associates, Inc. v. Maryland Waste Coalition, Inc.*, 327 Md. 596, 612, 612 A.2d 241, 249 (1992), quoting *Citizens Planning and Housing Association v. County Executive*, 273 Md. 333, 345, 329 A.2d 681, 687 (1974). The Board further argues that the Union has not " 'suffered some kind of special damage from such wrong differing in character and kind from that suffered by the general public.' " *Medical Waste*, 327 Md. at 613, 612 A.2d at 249, quoting *Rogers v. Maryland–National Capital Park and Planning Commission*, 253 Md. 687, 691, 253 A.2d 713, 715 (1969). We disagree. The Union's interests are sufficient to satisfy standing requirements.

The Union is an unincorporated association and the exclusive collective bargaining agent for the employees of the Baltimore City Public School System. *See* §§ 6–401 and 6–407 of the Education Article. As the designated collective bargaining agent, the Union is charged with statutory rights and fiduciary duties to negotiate for, and to act in the best interests of, the public school employees. § 6–510(b). The Union has a legal relationship with the New Board by way of the protection and benefits embodied in the negotiated labor agreement on behalf of Baltimore City public school employees. The function of the labor agreement is to set wages and establish minimum labor standards for the bargaining unit.

The reconstitution regulations and the Edison contract disturb those established standards and interject a competing labor pool with the bargaining unit. Additionally, the labor agreement does not apply to Edison; thus, the Edison contract reduces the size and scope of the Union's bargaining unit. The contract removes the Union from three schools, thus making its bargaining unit that much smaller. While no employee may be compelled to be a "member" of the Union, every Baltimore City Public School employee is a member of the Union's bargaining unit. The Union is empowered and, indeed, obligated by statute to represent all employees of the bargaining unit whether members of the Union or not. If more positions are included in the bargaining unit, the Union may have greater power to negotiate more advantageous

agreements and to carry out more effectively its fiduciary duties. The Union's status as the representative of public employees is diminished by the Edison contract.

Accordingly, we hold that the Union has demonstrated that, as the designated collective bargaining representative of Baltimore City Public School employees, it has standing to maintain the present judicial action.

## III.

Turning to the merits of the case, Baltimore Teachers Union argues that COMAR 13A.01.01.02B(8) and 13A.01.04.08 exceed the statutory authority of the Maryland State Board of Education, and that the State Board's contractual delegation of the operation and management of the reconstituted schools illegally grants powers to Edison which are vested exclusively in the New Board. While the State Board exercises general supervisory authority, the Union argues that the State Board lacks statutory authority to take over the basic functions of the local boards. The Union contends that there exists "no statute which directly and without equivocation authorizes the State Board" to turn over a public school to a third party and place it under the sole control of a private business.

We need not and shall not decide whether the State Board was statutorily authorized to adopt the reconstitution regulations in 1993. Even if the State Board lacked the statutory authority to promulgate the reconstitution regulations in 1993, subsequent enactments by the General Assembly remove any doubt as to the statutory authorization for the State Board's actions. The General Assembly has passed legislation which confirms and ratifies the State Board's power to issue the reconstitution regulations and to enter into third party contracts pursuant to those regulations. The legislation makes clear that the General Assembly knew of and approved of the State Board's exercise of its statutory authority to contract with Edison for the operation and management of the three public elementary schools.

 The principle of legislative ratification is well-established in the law. In the situation where a governmental entity takes action which may or may not be statutorily authorized, but where the appropriate legislative body later ratifies that action, the ratification clearly validates the action prospectively and, in the absence of constitutional limitations, may validate the action retroactively. As Justice Harlan stated for the Supreme Court long ago, "it is not perceived why subsequent legislative ratification is not, in the absence of constitutional restrictions upon such legislation, equivalent to original authority." *Grenada County v. Brown*, 112 U.S. 261, 271, 5 S.Ct. 125, 130, 28 L.Ed. 704, 708 (1884). This Court has also recognized "that whatever a legislative body 'may authorize in prospect, it may adopt and validate in retrospect, so long as there is no interference with vested rights,'" *Washington Nat'l Arena v. Prince George's Co.*, 287 Md. 38, 45, 410 A.2d 1060, 1064, *cert. denied*, 449 U.S. 834, 101 S.Ct. 106, 66 L.Ed.2d 40 (1980) (emphasis deleted), quoting *County Council v. Carl M. Freeman Assoc.*, 281 Md. 70, 79, 376 A.2d 860, 865 (1977). *See also, e.g., Bolles v. Town of Brimfield*, 120 U.S. 759, 762, 7 S.Ct. 736, 737, 30 L.Ed. 786, 788 (1887) ("the legislature, by subsequent ratification, [can] make that legal which was originally without legal sanction"); *Anderson v. Township of Santa Anna*, 116 U.S. 356, 364, 6 S.Ct. 413, 417, 29 L.Ed. 633, 636 (1886) (" 'Unless ... there be a constitutional inhibition, a legislature has power, when it interferes with no vested right, to enact retrospective statutes ... to ratify and confirm any act it might lawfully have authorized in the first instance,'" quoting *United States Mortgage Co. v. Gross*, 93 Ill. 483, 494 (1879)); *Dryfoos v. Hostetter*, 268 Md. 396, 404, 302 A.2d 28, 32–33 (1973).

In 1997, the General Assembly directed the New Board to take actions necessary to "[i]mprove the status of schools that are subject to a State reconstitution notice." § 4–309(d)(15) of the Education Article. In 1999 the General Assembly passed legislation regarding stipends for classroom teachers and, in doing so, distinguished between a local school board as an employer and a private employer of a teacher in a reconstitut-

ed school.[6] Section 6–306(b)(4) mandates that a classroom teacher holding an advanced professional certificate, who teaches in a public school identified by the State Board "as a reconstitution school, a reconstitution-eligible school, or a challenge school, shall receive a stipend from the State in the amount of $2,000 for each year that the teacher performs satisfactorily in the classroom." This language is in contrast to subsection (b)(2) that authorizes a stipend from the State for a classroom teacher "who is employed by a [local] board and who holds a certificate issued by the National Board for Professional Teaching Standards."

The General Assembly enacted legislation in 2000 protecting the pension rights of teachers previously employed by the local boards, working for a third party contractor operating a school under the reconstitution regulations.[7] The statutory

---

6. Section 6–306 of the Education Article provides:

" § 6–306. County grants for national certification.

(a) *Definition.*—In this section, "county grant for national certification" means an annual grant distributed to a teacher certified by the National Board for Professional Teaching Standards established:

(1) Outside of the collective bargaining process; or

(2) As part of a collective bargaining agreement with the local employee organization.

(b) *State budgetary funding.*—(1) For fiscal year 2000 and each subsequent fiscal year, the Governor shall include in each year's operating budget funding for stipends and bonuses provided in this subsection.

(2) A classroom teacher who holds a standard professional certificate or an advanced professional certificate who is employed by a county board and who holds a certificate issued by the National Board for Professional Teaching Standards shall receive a stipend from the State in an amount equal to the county grant for national certification, up to a maximum of $2,000 per qualified teacher."

\* \* \*

(4) A classroom teacher who holds an advanced professional certificate and teaches in a public school identified by the State Board as a reconstitution school, a reconstitution-eligible school, or a challenge school shall receive a stipend from the State in the amount of $2,000 for each year that the teacher performs satisfactorily in the classroom."

7. Code (1993, 1997 Repl. Vol, 2000 Supp.), § 22–216 of the State Personnel and Pensions Article provides:

" § 22–216. Employment by private contractors.

provisions specifically reference "an employee of the New Baltimore City Board of School Commissioners or another county board of education" who is "hired by a third-party

---

(a) *Applicability of section.*—This section applies to an individual who is:

(1) a member of the Teachers' Retirement System;

(2) an employee of the New Baltimore City Board of School Commissioners or another county board of education; and

(3) hired by a third party contractor to work in a school that is reconstituted by order of Maryland State Board of Education.

(b) *Withdrawal of accumulated contributions.*—An individual who is hired by a third party contractor may withdraw the member's accumulated contributions, within the meaning of § 20–101(b) of this article, at any time while the individual is employed by the third party contractor to work in a school that is reconstituted by order of the Maryland State Board of Education.

(c) *Subsequent employment by New Baltimore City Board or other county board of education.*—An individual who is hired by a third party contractor and subsequently becomes employed by the New Baltimore City Board of School Commissioners or another county board of education at any time while the order of reconstitution is in effect and on termination of the contract with the third party contractor:

(1) is not subject to the provisions of § 22–217 of this subtitle;

(2) shall be reinstated as a member of the Teachers' Retirement System;

(3) shall be entitled to restoration of any service credit to which the individual was entitled before employment by the third party contractor whether or not the individual was vested; and

(4) shall redeposit any of the amounts withdrawn under subsection (b) of this section with regular interest to the date of redeposit or, on retirement, the individual's retirement allowance shall be reduced by the actuarial equivalent of the accumulated contributions withdrawn with regular interest to the date of retirement.

(d) *Purchase of service credit—Conditions.*—Except as provided in subsection (e) of this section, at any time before retirement, an individual may purchase service credit for a period of employment by a third party contractor to work in a school that is reconstituted by order of the Maryland State Board of Education if the individual:

(1) completes a claim for the service credit and files it with the Board of Trustees on a form that the Board of Trustees provides; and

(2) pays to the Board of Trustees in a single payment the member contributions the individual would have made for the period of employment for which the service credit is being purchased plus regular interest to the date of payment.

(e) *Same—5 year limit.*—An individual may not purchase more than 5 years of service credit for the period of employment by a third party contractor to work in a school that is reconstituted by order of the Maryland State Board of Education."

contractor to work in a school that is reconstituted by order of the Maryland State Board of Education." § 22–216(a). The statute authorizes public school employees, whether vested or not in the retirement system, who are hired by a private contractor operating a school under state reconstitution, to withdraw their accumulated retirement or pension benefits without penalty, to receive service credit for the time employed with the private contractor, and to purchase up to five years of service credit at the employee rate for the period of employment with a third party contractor in a reconstituted school.

The 1997, 1999 and 2000 legislation demonstrates the General Assembly's awareness and approval that the State Board would be entering into contracts with private vendors in accordance with the reconstitution regulations. The statutory language directly references schools "subject to a State reconstitution notice" in addition to those schools "identified by the State Board as a reconstitution school, reconstitution-eligible school, or a challenge school." The language distinguishes between teachers "employed by a [local] board" and those who teach "in a public school identified by the State Board as a reconstitution school" for purposes of stipends and bonuses. The legislation affirmatively makes provisions to protect the pension rights of school teachers employed by third party contractors.

Given the language incorporating the reconstitution regulations and protecting the retirement benefits of those working in reconstituted schools, it is clear that the General Assembly recognized that the employer of a teacher in a public school under State reconstitution may be a private employer, and, thus, it is reasonable to infer legislative ratification of the regulations. As the Circuit Court correctly observed, "the General Assembly has considered and ... countenanced and condoned the [Board's] authority to enter into a third party contract." The General Assembly has clearly ratified the reconstitution regulations.

## IV.

■■ The Union in its brief before this Court, for the first time in this case, argues that the challenged regulations and the Edison contract violate Article VIII, § 1, of the Maryland Constitution.[8] The Union, in making such constitutional argument, chiefly relies upon *St. Mary's Industrial School for Boys v. Brown*, 45 Md. 310 (1876).

As earlier mentioned, the Union in its Circuit Court complaint emphasized that the "claims in this action are solely a matter of statutory law." In its complaint, cross-motion for summary judgment, and memoranda filed in the Circuit Court, the Union never raised a constitutional issue. The Circuit Court's memorandum and its declaratory judgment made no mention of a constitutional issue, as the Union had raised no such issue. The Union's certiorari petition did not present a constitutional issue.

■■ Maryland Rule 8–131(a) provides as follows:

**"Rule 8–131. Scope of review.**

(a) **Generally.** The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2–322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court. Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal."

Since the constitutional issue raised in the Union's brief was not raised in the trial court, we shall decline to address it. It

---

8. Article VIII, § 1, provides as follows:

"**Section 1. General Assembly to establish system of free public schools.**

The General Assembly, at its First Session after the adoption of this Constitution, shall by Law establish throughout the State a thorough and efficient System of Free Public Schools; and shall provide by taxation, or otherwise, for their maintenance."

is particularly important not to address a constitutional issue not raised in the trial court in light of the principle that a court will not unnecessarily decide a constitutional question. *Winder v. State*, 362 Md. 275, 306–307 n. 18, 765 A.2d 97, 114 n. 18 (2001); *Dorsey v. State*, 356 Md. 324, 342, 739 A.2d 41, 51 (1999).

Moreover, the case of *St. Mary's Industrial School for Boys v. Brown, supra*, relied on by the Union, did not involve any holding under the Maryland Constitution. The Court in that case simply held that a tax and an appropriation, by Baltimore City, giving funds to certain private organizations, were not authorized by the City Charter or by any enactment of the General Assembly. The challenged action in the case at bar was ratified and authorized by the General Assembly.

*JUDGMENT AFFIRMED, WITH COSTS.*

BELL, C.J., concurs and dissents.

Concurring and Dissenting Opinion by BELL, C.J.

I agree with the majority that the Baltimore Teachers' Union, American Federation of Teachers, Local 340, AFL–CIO, the plaintiff in the action for declaratory judgment and injunctive relief it filed in the Circuit Court for Baltimore City and the appellant in this Court, has standing to sue the Maryland State Department of Education, one of the appellees, in order to challenge both the Department's statutory authority to contract with a wholly private concern, to which it ceded virtually complete autonomy, for the operation and management of three Baltimore City public schools and the validity of the regulations the Department promulgated to make the challenged contractual arrangement possible. Clearly, the holding that the appellant has demonstrated its standing by showing how the regulations and the contract disturbed "minimum labor standards for the bargaining unit," 379 Md. 192, 199–200, 840 A.2d 728, 732–33 (2003) and diminished its "status as the representative of public employees," *id.* at 200, 840 A.2d at 732, is correct.

I do not agree with the majority's decision on the merits, however. On this appeal, the appellant asks the Court to answer a single question:

"When the Maryland State Board of Education exercises its 'visitatorial' power to 'reconstitute' a public school, may it compel a local board of education to fully privatize the school, so that the school's curriculum, administration and faculty members are selected, employed, and controlled, not by a local board, but instead by a for profit business corporation whose stock is publicly-traded?"

Rather than answer that question, the majority holds that, whether originally authorized or not, the General Assembly, by virtue of the enactment of legislation subsequent to the promulgation of the challenged regulations and the execution of the challenged contract, has ratified both the regulations and the operations and management contract with the private concern. More particularly, it says:

"Even if the State Board lacked the statutory authority to promulgate the reconstitution regulations in 1993, subsequent enactments by the General Assembly remove any doubt as to the statutory authorization for the State Board's actions. The General Assembly has passed legislation which confirms and ratifies the State Board's power to issue the reconstitution regulations and to enter into third party contracts pursuant to those regulations. The legislation makes clear that the General Assembly knew of and approved of the State board's exercise of its statutory authority to contract with Edison [Schools, Inc., the private concern] for the operation and management of the three public elementary schools."

379 Md. at 200, 840 A.2d at 733. The legislation to which the majority refers are Laws of 1997, ch. 105, § 1, codified at Maryland Code (1978, 1999 Replacement Volume) § 4–309, and, in particular, subsection (d)(15) of the Education Article;[1] Laws of 1999, ch. 600, § 1, codified at § 6–306 of the Edu-

---

1. Maryland Code (1978, 1999—Replacement Volume) § 4–309(d)(15), now § 4–309(c)(17) of the Education Article, details one of the actions

the General Assembly required the master plan it mandated the New Baltimore City Board of School Commissioners to develop as necessary to achieve educational reform in the Baltimore City public schools, the purpose of the legislation. It provides: "Improve the status of schools that are subject to a State reconstitution notice." None of the other 15 actions mentions, or relates, to reconstitution:

"(1) Complete incorporation of the key recommendations of the 1992 Towers Perrin/Cresap Management Study report and the 1994 and 1995 MGT of America, Inc. reports;

"(2) Incorporate the requirements of the long-term compliance plan and goals in Vaughn G. v. Amprey, et al, case no. MJG–84–1911, United States District Court for the District of Maryland, concerning the delivery of education services to students with disabilities;

"(3) Provide for the reorganization of the central office of the Baltimore City Public School System;

"(4) Provide effective curriculum and instructional programs for the Baltimore City Public School System, including the development and dissemination of:

"(i) A citywide curriculum framework reflecting State learning outcomes, including Maryland School Performance Program standards, and an appropriate developmental sequence for students;

"(ii) An effective program of professional development and training for the staff of the Baltimore City Public School System including development and implementation of a performance-based system-wide personnel evaluation system for teachers, principals and administrators; and

"(iii) An effective educational program for meeting the needs of students at risk of educational failure;

"(5) Provide effective management information systems for the Baltimore City Public School System, including the capacity to accurately track student enrollment, attendance, academic records, discipline records, and compliance with the provisions of the federal Individuals with Disabilities Education Act;

"(6) Provide an effective financial management and budgeting system for the Baltimore City Public School System to ensure the maximization and appropriate utilization of all available resources;

"(7) Provide effective staff hiring and assignment;

"(8) Develop an effective system of providing instructional materials and support services;

"(9) Develop model school reform initiatives;

"(10) Provide appropriate methods for student assessment and remediation;

"(11) Develop and implement a student code of discipline as required in § 7–306 of this article;

"(12) Develop an effective system for planning and providing for construction, repair, and maintenance services for school buildings which shall include a review by the Board to assure the most efficient and productive use of the system's resources, including examination and reduction of the cost of underutilized schools and proposals for school mergers or closures if appropriate;

"(13) Increase parental participation;

cation Article, and, in particular, section (a) and subsections (b)(2) and (4);[2] and Laws of 2000, ch. 688, codified at Maryland Code (1993, 1997 Replacement Volume, 2000 Cum.Supp.) § 22-216 of the State Personnel and Pensions Article.[3]

---

"(14) Include measurable outcomes and time lines for the implementation and evaluation of the reforms made in accordance with the master plan and the reporting of this information to the Governor, the Mayor of Baltimore City, and, in accordance with § 2-1246 of the State Government Article, the General Assembly;

\* \* \* \* \* \*

"(16) Develop an effective system of teacher input regarding implementation of school reform initiatives, that includes active and ongoing consultation with classroom teachers at the elementary, middle, and high school levels."

**2.** Section 6-306 of the Education Article, as relevant, provides:

"(a) Definition.—In this section, 'county grant for national certification' means an annual grant distributed to a teacher certified by the National Board for Professional Teaching Standards established:

"(1) Outside of the collective bargaining process; or

"(2) As part of a collective bargaining agreement with the local employee organization.

"(b) State budgetary funding.—(1) For fiscal year 2000 and each subsequent fiscal year, the Governor shall include in each year's operating budget funding for the stipends and bonuses provided in this subsection.

"(2) A classroom teacher who holds a standard professional certificate or an advanced professional certificate who is employed by a county board and who holds a certificate issued by the National Board for Professional Teaching Standards shall receive a stipend from the State in an amount equal to the county grant for national certification, up to a maximum of $2,000 per qualified teacher.

\* \* \* \* \* \*

"(4) A classroom teacher who holds an advanced professional certificate and teaches in a public school identified by the State Board as a reconstitution school, a reconstitution-eligible school, or a challenge school shall receive a stipend from the State in the amount of $2,000 for each year that the teacher performs satisfactorily in the classroom."

**3.** Maryland Code (1993, 1997 Replacement Volume, 2000 Cum.Supp.) § 22-216 of the State Personnel and Pensions Article, titled "Employment by private contractors," provides:

"(a) Applicability of section.—This section applies to an individual who is:

"(1) a member of the Teachers' Retirement System;

Reconstitution of public schools is treated in Title 13A, Subtitle 01, Chapter 04 of the Code of Maryland Regulations ("COMAR"). COMAR 13A.01.04.02B (8) defines "reconstitution" as

"(a) ... changing one or more of a school's:

"(i) Administration;

---

"(2) an employee of the New Baltimore City Board of School Commissioners or another county board of education; and

"(3) hired by a third party contractor to work in a school that is reconstituted by order of the Maryland State Board of Education.

"(b) Withdrawal of accumulated contributions.—An individual who is hired by a third party contractor may withdraw the member's accumulated contributions, within the meaning of § 20–101(b) of this article, at any time while the individual is employed by the third party contractor to work in a school that is reconstituted by order of the Maryland State Board of Education.

"(c) Subsequent employment by New Baltimore City Board or other county board of education.—An individual who is hired by a third party contractor and subsequently becomes employed by the New Baltimore City Board of School Commissioners or another county board of education at any time while the order of reconstitution is in effect and on termination of the contract with the third party contractor:

"(1) is not subject to the provisions of § 22–217 of this subtitle;

"(2) shall be reinstated as a member of the Teachers' Retirement System;

"(3) shall be entitled to restoration of any service credit to which the individual was entitled before employment by the third party contractor whether or not the individual was vested; and

"(4) shall redeposit any of the amounts withdrawn under subsection (b) of this section with regular interest to the date of redeposit or, on retirement, the individual's retirement allowance shall be reduced by the actuarial equivalent of the accumulated contributions withdrawn with regular interest to the date of retirement.

"(d) Purchase of service credit—Conditions.—Except as provided in subsection (e) of this section, at any time before retirement, an individual may purchase service credit for a period of employment by a third party contractor to work in a school that is reconstituted by order of the Maryland State Board of Education if the individual:

"(1) completes a claim for the service credit and files it with the Board of Trustees on a form that the Board of Trustees provides; and

"(2) pays to the Board of Trustees in a single payment the member contributions the individual would have made for the period of employment for which service credit is being purchased plus regular interest to the date of payment.

"(e) Same—5 year limit.—An individual may not purchase more than 5 years of service credit for the period of employment by a third party contractor to work in a school that is reconstituted by order of the Maryland State Board of Education."

"(ii) Staff;

"(iii) Organization; or

"(iv) Instructional program.

"(b) [and] may include contracting with a third party as provided in Regulation .07 of this chapter."

The regulations provide for both local, *see*, COMAR 13A.01.04.07, and state, *see* COMAR 13A.01.04.08, reconstitution. Pursuant to the former, the local board of education is charged with "working with each reconstitution-eligible school" and developing and submitting "a reconstitution proposal that is school-specific," to the State Board for approval or approval with conditions. COMAR 13A.01.04.07C (6) and (7). State reconstitution occurs when the State Board is charged with "determin[ing] the program and management reconstitution of the school." Regulation .08B also addresses how that program and management reconstitution may be handled. It provides:

"B. Contract With Third Party.

"(1) The State Board of Education may order the school to be operated under contract with a third party pursuant to conditions established by the State Board of Education.

"(2) The State Board of Education, the local board of education, and the third-party contractor shall be parties to the contract.

"(3) The contract may be for an initial term not to exceed 5 years, and may be subject to renewal upon review and approval by the State Board of Education.

"(4) The contract shall include specific benchmarks by which the third-party contractor shall be measured. The State Board of Education shall monitor the contractor's performance.

"(5) The local school system shall pay to the third-party contractor for the term of the contract the higher of an amount equal to the average system-wide per pupil expenditure times the full time equivalent enrollment for kindergarten and higher grades in the State reconstituted school as of September 30, or the total actual cost of

operating the school for the previous school year. Adjustments in the average per pupil expenditure calculation may be made for certain targeted funding programs in accordance with the legal requirements for those programs. In addition the contractor will receive funds equal to the amount of support the school system received in the previous school year for pre-kindergarten services at the identified school."

"Third party," referred to in Regulations .02B (8) and .08B, is defined in Regulation .02B (10) to mean "an entity, public or private, who is not managing the school at the time of a reconstitution decision."

The Maryland Constitution requires the General Assembly to "establish throughout the State a thorough and efficient System of Free Public Schools; and [to] provide by taxation, or otherwise, for their maintenance." Article VIII, § 1. The provision of that system is a two-tiered endeavor, shared by the State Board, the head of the State Department of Education and a principal department of State government, § § 2–101 and 2–102 of the Education Article, and the twenty four local boards, including Baltimore City, of education. The State Board's powers and authority are enumerated in § 2–205 of the Education Article. They include determining the elementary and secondary educational policies of the State, subsection (b)(1); causing implementation of provisions of the Education Article that are within its jurisdiction, subsection (b)(2); enforcing the provisions of the Education Article within its jurisdiction and its bylaws, rules, and regulations, through legal proceedings where necessary, subsection (d); finally deciding controversies and disputes concerning the meaning of the Education Article and the bylaws, rules, and regulations adopted pursuant to it, subsection (e); exercising, through the State Superintendent, "general control and supervision over the public schools and educational interests of this State," subsection (g); establishing basic policy and guidelines for the program of instruction for the public schools, subsection (h)(1); investigating, employing additional expert assistance for the purpose, the educational needs of this State and methods to

improve educational conditions, subsection (i)(1)(i). In addition, the State Board is required to adopt bylaws, rules, and regulations, applicable to all jurisdictions and having "the force of law when adopted and published," for the administration of the public schools, § 2–205(c), as well as "for the approval and accreditation of all public schools." § 2–206(c).

On the other hand, the local boards, including the New School Board of Baltimore City, has some responsibilities for public education in their jurisdictions. Those responsibilities are enumerated, in the case of county boards, in § 4–108 of the Education Article:

"Each county board shall:

"(1) To the best of its ability carry out the applicable provisions of this article and the bylaws, rules, regulations, and policies of the State Board;

"(2) Maintain throughout its county a reasonably uniform system of public schools that is designed to provide quality education and equal educational opportunity for all children;

"(3) Subject to this article and to the applicable bylaws, rules, and regulations of the State Board, determine, with the advice of the county superintendent, the educational policies of the county school system; and

"(4) Adopt, codify, and make available to the public bylaws, rules, and regulations not inconsistent with State law, for the conduct and management of the county public schools."

Section 4–303, applicable to the New School Board, provides, as relevant:

"(b) Purpose.—The purpose of the Board is to:

"(1) Raise the level of academic achievement of the students in the Baltimore City Public School System; and

"(2) Improve the management and administration of the public school system in Baltimore City.

"(c) Academic achievement.—The Board shall be held accountable for the academic achievement of the public school students in Baltimore City.

"(d) Powers and duties.—

"(1) The Board shall have the authority and be responsible for all functions relating to the Baltimore City Public School System.

"(2) Notwithstanding any provision of local law governing the Baltimore City Public School System, the Board may adopt rules and regulations and prescribe policies and procedures for the management, maintenance, operation, and control of the Baltimore City Public School System.

"(3) The Board shall assume responsibility for all of the functions formerly performed by the Superintendent of Public Instruction of Baltimore City and the Board of School Commissioners of Baltimore City."

To be sure, the State Board has visitatorial power over the local boards, *Wiley v. Allegany County Sch. Com'rs,* 51 Md. 401, 405–06 (1879) (after noting the State Board's duty with regard to the public education law, to make by-laws for the administration of the public school system, and to suspend or remove examiners or teachers, characterizing the provision requiring it to "explain the true intent and meaning of the law, and ... decide, without expense to the parties concerned, *all controversies and disputes that may arise under it,*" as "a visitatorial power of the most comprehensive character."), which we have held, gives it the "last word on any matter concerning educational policy or the administration of the system of public education." *Wilson v. Board of Educ.,* 234 Md. 561, 565, 200 A.2d 67, 69 (1964). In *Board of Education v. Waeldner,* 298 Md. 354, 360, 470 A.2d 332, 335 (1984), we referred to the State Board's general control and supervision over the public schools and educational interests, its authority to determine the elementary and secondary educational policies, its obligation to adopt bylaws, rules, and regulations and its responsibility for the interpretation of the public education law and the resolution of disputes arising under it to explain the extent of the visitatorial power. Nevertheless, we have described the visitatorial power "as one of supervision, regulation and direction." *Zeitschel v. Board of Education of Carroll County,* 274 Md. 69, 80–81, 332 A.2d 906, 912 (1975), citing *Peter v. Prettyman,* 62 Md. 566, 576 (1884), a case involving

the visitatorial power of circuit court judges. More particularly, we said:

"We think it beyond question that the power of visitation vested in the State Board is one of general control and supervision; it authorizes the State Board to superintend the activities of the local boards of education to keep them within the legitimate sphere of their operations, and whenever a controversy or dispute arises involving the educational policy or proper administration of the public school system of the State, the State Board's visitatorial power authorizes it to correct all abuses of authority and to nullify all irregular proceedings."

*Id.* at 81, 332 A.2d at 913.

We have also said:

"Of course, the visitatorial power of the State Board is not without limits. It cannot be asserted to finally decide purely legal questions. *Hobbs v. Hodges,* 176 Md. 457, 5 A.2d 842 (1939); *Board of Education v. Cearfoss,* 165 Md. 178, 166 A. 732 (1933). Neither can the State Board exercise the visitatorial power fraudulently, in bad faith, or in breach of trust. *Coddington v. Helbig,* 195 Md. 330, 73 A.2d 454 (1950). Another obvious limitation is that the visitatorial power cannot be exercised in direct contravention of statute. The State Board is manifestly of legislative creation; it has only such powers as the legislature has vested in it, expressly or by necessary implication. *See Purnell v. State Bd. of Ed.,* 125 Md. 266, 93 A. 518 (1915). *Cf. Peters v. Hobby,* 349 U.S. 331, 75 S.Ct. 790, 99 L.Ed. 1129 (1955); *Stark v. Wickard,* 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733 (1944). At one time, State Board bylaws were expressly required not to be at variance with statute. Ch. 463, Acts of 1874. This language was later eliminated. Ch. 506, Acts of 1916. But with or without such language, it is clear that 'rules and regulations adopted by administrative agencies, to be valid, must be reasonable and consistent with the letter and policy of the statute under which the agency acts.' *Farber's, Inc. v. Comptroller,* 266 Md. 44, 50–51, 291 A.2d 658, 662 (1972); *Comptroller v. M.E. Rockhill, Inc.,* 205 Md.

226, 233, 107 A.2d 93, 97 (1954). We said as much in *Metcalf v. Cook*, 168 Md. 475, 178 A. 219 (1935), a case involving an alleged conflict between a State Board bylaw requiring new teachers to graduate in the upper 4/5ths of their class and an existing statute which provided that teaching certification may be issued to college graduates."
*Halsey v. Board of Education*, 273 Md. 566, 572–573, 331 A.2d 306, 310 (1975).

None of the legislation on which the majority relies for ratification expressly and directly does so. To be sure, each mentions reconstitution in some context, § 4–309(d)(15) referring to "schools that are subject to a State reconstitution notice;" § 6–306(b)(4) mentioning "a reconstitution school, a reconstitution-eligible school;" and SPP § 22–216(a) referencing an individual "hired by a third party contractor to work in a school that is reconstituted by order of Maryland State Board of Education," not one of the three statutes expressly ratifies, or even refers specifically to, the COMAR regulations or the reconstitution contract with the private concern. Nor does any one of them define what is meant by reconstitution. According to COMAR 13A.01.04.02B(8), reconstitution could occur if only one of the four components of a public school operation has been taken over and the third party is involved only with that component and, therefore, some control is retained by the local board. And the statutes do not distinguish between local reconstitution and state reconstitution. That is important because, if the former, the shared relationship is not disrupted, because the local board would retain the responsibility for the local school's performance.

In my view, these three fleeting and imprecise references are simply insufficient to constitute legislative ratification of the State Board's promulgation of regulations authorizing reconstitution, a process of recent vintage and inconsistent with the two tiered approach to the provision and governance of public education or of the reconstitution contract at issue. As the appellant points out, the public education law is comprehensive and a part of a statutory scheme. Given that scheme and the responsibilities it places on local boards and in

this case, on the New Board, for reconstitution as proposed in this case to occur, it submits and I agree, would require, in effect, repeal or amendment of several sections of the Education Article, *i.e.*

"§ 4–101 (a) ('Educational matters that affect the counties shall be under the control of a county board of education in each county'); § 4–303(d) ('The Board shall have authority and be responsible for all functions relating to the Baltimore City Public School System'); § 4–103(a) ('[E]ach county board shall: (1) Appoint all principals, teachers, and other certificated and non-certificated personnel; and (2) Set their salaries'); § 4–311(a) ('the [N]ew Board shall establish a personnel system governing certificated and non[-]certificated employees'); § 6–201(a) ('The county board shall employ individuals in the positions that the county board considers necessary for the operation of public schools in the county'); § 6–201(b)(2) ('T}he county superintendent shall (i) Assign [personnel] to their positions in the schools; (ii) Transfer [personnel] as the needs of the schools require; (iii) Recommend them for promotion; and (iv) Suspend them for cause and recommend them for dismissal in accordance with § 6–202 of this article'); § 6–402(d) (defining 'public school employer' as the county board of education or the New Baltimore City Board of School Commissioners); § 4–123(e) (mandating that if a county board enters into an agreement for the cooperative or joint administration of a program it 'does not relieve any county board or other participant of any obligation or responsibility imposed on it by law')."

If the majority is correct, the public education statutory scheme can be disrupted and undermined, not by specific legislative direction, *i.e.* legislation that, by its express terms, is intended to do so, but by implication, on the basis of legislation that repeals or amends those parts of the Public Education Law that gives local boards a role to play in the governance of the public schools within their jurisdiction. It is well settled that repeals by implication are not favored. *Ronald Fishkind Realty v. Sampson,* 306 Md. 269, 286, 508 A.2d 478, 487 (1986); *Dep't of Nat. Resources v. France,* 277

Md. 432, 460, 357 A.2d 78 (1976). In *State v. Harris,* 327 Md. 32, 39, 607 A.2d 552, 555–56 (1992), this Court observed:

"[A] repeal by implication does not occur unless the language of the later statute plainly shows that the legislature intended to repeal the earlier statute. *Montgomery County v. Bigelow,* 196 Md. 413, 423, 77 A.2d 164 (1950); *Pressman v. Elgin,* 187 Md. 446, 450, 50 A.2d 560 (1947). Generally, therefore, a later statute will not be held to repeal an earlier statute by implication unless there is some express reference to the earlier statute. *Gannon & Son v. Emerson,* 291 Md. 443, 455, 435 A.2d 449 (1981); *Kirkwood v. Provident Savings Bank,* 205 Md. 48, 55, 106 A.2d 103 (1954); *Thomas v. State,* 173 Md. 676, 681, 197 A. 296 (1938)."

In any event, as the majority acknowledges, in order for legislative ratification to be viable, the legislative body must have been empowered prospectively to authorize the act it would adopt and validate in retrospect. *Washington Nat'l Arena v. Prince George's Co.* 287 Md. 38, 45, 410 A.2d 1060, 1064, *cert. denied,* 449 U.S. 834, 101 S.Ct. 106, 66 L.Ed.2d 40 (1980); *Co. Council v. Carl M. Freeman Assoc.,* 281 Md. 70, 79, 376 A.2d 860, 865 (1977). I am not convinced that the State Board was authorized to promulgate the regulations at issue or that the General Assembly could have authorized it to do so without providing some guidelines to inform its decision in that regard. After all, it is the General Assembly, and not the State Board, that is charged with the establishment and maintenance of a thorough and efficient system of public schools in the State. Md. Const. Art. VIII § 1. In the discharge of that responsibility, the General Assembly enacted the statutory scheme under which the State's public schools presently operate. To the State Board the Legislature gave substantial authority, general supervision over the system, even the last word on matters of educational policy and the administration of the system. But it also gave substantial responsibility to the local boards.

The regulations at issue are significantly at odds with the statutory scheme established by the Legislature. So much so that, in my view, they are more appropriately the subject of

legislation and, indeed, constituted law making, and, so, were beyond the authority of the State Board to promulgate. The State Board is an administrative agency, a part of the executive branch of government. The Legislature, without, at the least, providing safeguards and standards to direct its exercise, may not delegate the power to make laws to an administrative agency, an arm of the executive branch of government. *Department of Transportation v. Armacost,* 311 Md. 64, 80, 532 A.2d 1056, 1063 (1987); *Pressman v. Barnes,* 209 Md. 544, 555, 121 A.2d 816, 822 (1956).

I addressed this issue at great length in dissent in *Lussier v. Md. Racing Commission,* 343 Md. 681, 701–720, 684 A.2d 804, 813–823 (1996). For the reasons there expressed, I believe the State Board inappropriately promulgated the regulations and that the General Assembly, because it gave no advance guidance, did not ratify, and, indeed could not have ratified, the State Board's actions in that regard.

Therefore, and for the foregoing reasons, I dissent.